WESTERN & ATLANTIC RAILROAD COMPANY *v.* COX.

1. It is not a good objection to the admission in evidence of the Carlisle mortality table, and the table showing the value of annuities according to the Carlisle mortality table, that the accuracy and correctness of such tables have not been shown. These, being standard tables, are admissible in evidence, not as conclusive proof of the expectancy of life of a certain person and the present value of an annuity, but as data which may be considered by the jury in determining such questions when made.
2. On account of the improper and prejudicial remarks made in his concluding address to the jury by counsel for the plaintiff in the court below, a mistrial should have been granted ; and inasmuch as the motion of counsel for the defendant to grant a mistrial was overruled, it was error not to set aside the verdict for the plaintiff and grant a new trial.

Submitted May 1,— Decided June 10, 1902.

Action for damages. Before Judge Gober. Cobb superior court. December 23, 1901.

*Payne & Tye* and *Clay & Blair,* for plaintiff in error.
*Morris & Green* and *J. Z. Foster,* contra.

LITTLE, J. Cox instituted an action against the Western & Atlantic Railroad Company, to recover damages for personal injuries which he alleged he sustained on account of the negligence of the servants and employees of the company in the running and operation of one of its trains. All the material allegations of the petition were denied by the defendant. It appears from the evidence that the plaintiff, a man eighty years old, attempted to drive across a track of the defendant in a buggy, when a freight-train ran into the buggy inflicting upon the person and property of the plaintiff the injuries for which he sued. The jury returned a verdict for the plaintiff for $750. The defendant made a motion for a new trial, which was overruled, and it excepted. Inasmuch as the judgment of the court below is reversed on one of the grounds of the motion for a new trial hereafter considered, no attempt is here made to set out the evidence in detail, or to pass upon those grounds which complain that the verdict is contrary to the evidence.

1. It is insisted on the part of the plaintiff in error that the court erred in admitting in evidence, over the defendant's objection, certain tables known as the Carlisle mortality table, and the annuity table, published in the appendix to the 70th volume of the *Georgia Reports.* The defendant urged that these tables were not admissible in evidence, because their accuracy had not been proved, and there was no evidence as to whether they were correct. In their briefs, counsel for the plaintiff in error insist that as there was no evidence before the court that these tables are what they purport to be, or that they are correctly figured in the volume of the *Georgia Reports* referred to, they were inadmissible as evidence, and, when challenged, were not evidence to prove any fact in any court. To support this contention they cite the case of *W. & A. R. Co.* v. *Hyer,* 113 *Ga.* 776, which in our judgment does not aid them in sustaining their position. In the case cited there appeared in the brief of evidence simply the statement that "Plaintiff here introduced in evidence the mortality and annuity tables in the seventieth Georgia Report," and nothing further appeared in the brief of evidence in relation to the tables. It was ruled in that case that a mere statement in the brief of evidence that the plaintiff introduced in evidence the mortality and annuity tables in the 70th volume of the · *Georgia Reports* does not authorize this court to take judicial cognizance of the *contents* of the tables published by the official reporter as an appendix to that volume. The point made in that case was that, as the brief of evidence showed that certain tables were introduced which appear as an appendix in one volume of the reports of cases decided by this court, judicial cognizance should be taken of what was there shown; but it was held that the mere recital of the fact that certain mortality and annuity tables were introduced in evidence did not authorize this court to take judicial notice of what the tables contained. In the opinion Lumpkin, P. J., said : "We have no authority to look outside of the record of any given case for the purpose of discovering something which that record should, but does not, itself disclose." This we understand to be a very different proposition from the question whether the correctness of such tables must be proved as a condition precedent to their admission in evidence. The record in the *Hyer* case did not contain the tables. The question here is whether the Carlisle mortality table and the annuity table are of themselves admissible

in evidence. That they are, without any proof of their correctness, is not an open question. In the case of *A. & W. P. R. Co.* v. *Johnson*, 66 *Ga.* 259, this court ruled that "It is not improper to intro- duce in evidence standard life-tables to show the expectancy of life of a person of the age of the injured party, as a basis upon which to estimate the amount of damages he should recover," and in the case of *Central R. Co.* v. *Crosby*, 74 *Ga.* 738, it was held: "The Carlisle tables of mortality are admissible in evidence. They are not conclusive, but may be considered by the jury as data on which they may act." It will be remembered that the objection to the introduction of the tables in this case was not urged because they were not the Carlisle tables of mortality, but because the correct- ness of the tables had not been proved. The case last cited is di- rect authority for the proposition that the Carlisle tables are ad- missible in evidence. That is to say that when it appears that the table of mortality offered in evidence is the Carlisle table, it is ad- missible, and it is admissible because it is a standard table. Such admission does not conclude the fact of expectancy as shown by the table; but, being a recognized standard table, what it contains may, not must, be taken and considered by the jury. Again, in the case of *R. & D. R. Co.* v. *Garner*, 91 *Ga.* 27, this court ruled that where the evidence bearing on the question whether the in- jury of the plaintiff was permanent was conflicting, it was not error to admit in his behalf the mortality and annuity tables in 70 *Ga.*, to aid the jury in arriving at the proper amount of damages in case they should determine that the plaintiff was entitled to recover and that the injuries were permanent. So it must be ruled in this case that the trial judge did not err in the admission of the tables re- ferred to.

2. Another reason alleged why the trial judge erred in overrul- ing the motion for a new trial is that while counsel for the plain- tiff was concluding his address to the jury he used the following language: "The only way to reach a railroad is to make it pay money. A railroad has no soul, no conscience, no sympathy, and no God." When this language was used, counsel for the defend- ant asked that the jury be retired, and moved the court to declare a mistrial on the ground that this language was inflammatory and improper. The motion was overruled, and it is here contended that it should have been sustained. It must be conceded that the

language used was improper, irrelevant, inflammatory, and preju-
dicial to the right of the defendant to have its case tried under the
same rules and regulations that would govern the trial of a similar
action against a natural person.    It has always been held in this
and other States, and in all countries where justice is sought to be
done to parties litigant, that counsel, in their addresses to the jury,
shall be confined to legitimate argument.    An attorney is not only
an officer of the court, but his office is that of a helper of the court
to administer justice impartially.    In the case of Thompson v.
State, 43 Tex. 268, Mr. Justice Moore, delivering the opinion, said:
" Zeal in behalf of their clients or desire for success should never
induce counsel in civil cases, much less those representing the State
in criminal cases, to permit themselves to endeavor to obtain a
verdict by arguments based upon any other than the facts in the
case and the conclusions legitimately deducible from the law ap-
plicable to them."    Mr. Thompson, in his treatise on the law of
Trials, in section 966 of volume 1, gives a number of instances
where, under the application of the rule just quoted, judgments of
the trial court have been reversed.    Among these numerous in-
stances is stated the rule laid down by the Supreme Court of Ala-
bama in the case of Cross v. State, 68 Ala. 476, where it is said:
" There must be an objection in the court below, the objection over-
ruled, and an exception reserved.    The statement must be *as of
fact;* the fact stated must be unsupported by any evidence, must
be pertinent to the issue, or its natural tendency must be to influ-
ence the finding of the jury; or the case is not brought within the
influence of this rule.    .    .    We would not embarrass free discus-
sion, or regard the many hasty or exaggerated statements counsel
often make in the heat of debate, which can not and are not ex-
pected to become factors in the formation of their verdict.    .    .
It is only when the statement is of a substantive, outside fact —
stated as a fact — and which manifestly bears on a material in-
quiry before the jury, that the court can interfere and arrest dis-
cussion."    In the case of Pierson v. State, 18 Tex. App. 524, Wil-
son, J., said : " In view of the frequency of exceptions of this char-
acter, we will take occasion here to say that, before we will reverse
a conviction because of remarks of prosecuting counsel, it must ap-
pear to us: (1) that the remarks were improper; and (2) that they
were of a material character and such as, under the circumstances,

were calculated to injuriously affect the defendant's rights." It was ruled in the case of School-town of Rochester v. Shaw, 100 Ind. 268, that an appeal to local prejudice in these words: " Stand by your own citizen. . . The school directors, people and citizens of Fulton county are trying to disgrace and oppress a citizen of Marshall county," affords ground for a new trial. In the case of Willis v. McNeill, 57 Tex. 465, it was ruled to be an abuse of the right of argument, and a ground for awarding a new trial, for counsel for the plaintiff, in an action for maliciously suing out an attachment, to discuss in his closing argument the wealth of the defendants, and to insist that the wealthier they were the greater the amount of damages that should be assessed against them. For a similar reason, it was held in the case of Brown v. Swineford, 44 Wis. 282, to be ground for a new trial for counsel for the plaintiff, in an action against an officer in a railway company, for a tort which might be the subject of exemplary damages, to comment to the jury, in the concluding argument, upon the defendant's connection with the railway company, upon the wealth and power of the company, and upon the defendant's ability, from these circumstances, to pay any judgment which might be rendered against him, although no evidence had been given as to his pecuniary ability. For illustration of the rules under which new trials are granted for improper statements by counsel in addresses to the jury, see 1 Thomp. Tr., §§ 974 et seq. These rules have been recognized and enforced by this court since its organization. In *Berry* v. *State*, 10 *Ga.* 511, it was ruled that for counsel to attempt surreptitiously to get before the jury facts by way of supposition, which have not been proved, is highly reprehensible, and that the practice should be repressed by the court without waiting to be called on by the opposite party. In his opinion delivered in that case, where counsel for the State was permitted to indulge in certain suppositions which were fully stated, Lumpkin, J., said: "Does not history, ancient and modern — nature, art, science, and philosophy — the moral, political, financial, commercial, and legal — all open to counsel, their rich and inexhaustible treasures, for illustration? Here, under the fullest inspiration of excited genius, they may give vent to their glowing conceptions; in thoughts that breathe and words that burn. Nay more, giving reins to their imagination, they may permit the spirit of their heated enthusiasm to swing and sweep beyond the flam-

ing bounds of space and time. . . But let nothing tempt them to pervert the testimony, or surreptitiously array before the jury facts which, whether true or not, have not been proven." In the case of *Mitchum* v. *State*, 11 *Ga.* 616, it was ruled: "It is error in the court, when requested to prevent it, to permit counsel to comment on facts, in their argument to the jury, not in evidence." In the opinion in that case Nisbet, J., said: "We have had occasion to consider the habit of counsel, in addressing the jury, of commenting upon matters not proven and not growing out of the pleadings, before, and have been content with visiting it with a decided and emphatic disapproval. [Citing *Berry* v. *State*, supra.] We entertain no shadow of doubt as to the necessity of pronouncing it, as we now do, illegal and highly prejudicial to a fair and just administration of the rights of parties, either on the criminal or civil side of the court. It is the duty of the court to prevent such comments, and in all cases where this is not done, provided the court is requested to prevent them, we shall hold, as we rule in this case, that it is good ground for a new trial." So, too, in later cases, the same rule has been observed. In the case of *Augusta R. Co.* v. *Randall*, 85 *Ga.* 297, counsel for the plaintiff, after indulging in remarks before the jury implying that the superintendent of the railroad company was responsible for keeping a witness away from the court, which he withdrew on an intimation from the court that he was not authorized to make the statement without evidence, said: "At all events, gentlemen, I believe before high heaven that if Mr. Mosher had not paid this visit to our witness this morning, she would have fulfilled her promise and would have come to court and testified in this case. It would be improper for me to say what she would have testified to; but we deemed her testimony important, in fact our most important witness, and were very anxious to have her present." The court said that the remarks of counsel were calculated to and doubtless did prejudice the minds of the jury against the defendant, and ruled that the court below should not have refused to grant a new trial on this ground. And as late as the case of *Ivey* v. *State*, 113 *Ga.* 1062, this court, citing cases from the 10, 11, 61, 85, 86, 87, 88, 91, and 106 *Ga.*, adhered to the same rule. Under these authorities, there can be no question that the court below, when the defendant's counsel requested the grant of a mistrial, should have granted the motion. It may have been that had the

trial judge fully and explicitly instructed the jury that no consideration of the objectionable remarks should affect their verdict, and satisfied himself that the evil effects of the remarks which counsel made had not found lodgment in the minds of the jurors, this would have sufficed. But however this may be, in the absence of any interposition a mistrial should have been ordered, and the failure to so order it is cause for a new trial.

. The grounds of the motion which have not been specifically referred to present no legal cause for the grant of a new trial.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*