62981. CENTRAL OF GEORGIA RAILROAD COMPANY v. HOWARD.

BIRDSONG, Judge.

Appellant Central of Georgia Railroad Co. (Railroad) appeals a jury verdict awarded to the appellee in this suit. The appellee, a locomotive engineer, allegedly sustained injury when he was thrown from the engineer's seat onto his buttocks on the "catwalk" of the

engine when, because of a broken coupling, his train cars collided with other train cars. Appellee's complaint contained the following allegation: "This action is brought under and by virtue of the provisions of the Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq., and the Safety Appliance Act, Title 45, U.S.C.A. § 2, § 5, and § 8, and particularly that part that deals with automatic couplers." *Held:*

1. The Railroad admitted absolute liability in the case under the Safety Appliance Act; therefore, the only issues at trial should have been whether, and to what extent, the accident proximately caused the appellee's alleged injuries. Over repeated and continuing objection by the defense, and with the approval of the trial court, the appellee devoted nearly half of the trial proceedings to the vilification and calumniation of the Railroad corporation and, in particular, of Mr. Codgell, the chief operating officer in charge of railroad operations for Atlanta, Savannah and central Georgia. Part of the stated objective in all this was to show that the Railroad had, on account of the appellee's suit for injury, harassed the appellee by firing him (the evidence shows that some two years after the injury the Railroad fired the appellee for having discharged a .22 rifle on Union Camp property; the appellee left his train and shot bullets into a pine tree in an occupied area of Union Camp property), and hence to claim mental anguish damages based on this alleged harassment and some $11,000 as wages lost before the Railroad reinstated the appellee. In the main however, the appellee with the trial court's approval and over objection, sought to establish the credibility of certain witnesses, also Railroad employees, by showing that they were afraid of Mr. Codgell, who was present in the courtroom, because one of these witnesses (Hendley) had allegedly previously been fired by Mr. Codgell for testifying in favor of another railroad employee in an injury suit against the Railroad.

All of this matter was irrelevant to the issues under trial. The credibility of these witnesses, who were called by the plaintiff Howard as adverse witnesses, was never impeached or impugned by the appellant Railroad in any way. In fact, as appellee's counsel said in closing argument, despite the "pressure these men were under that came in here to testify for Sonny Howard when their supervisor was sitting back there. . .*nevertheless they came in and told the truth.*" None of these witnesses denied that Howard had been injured. The witness Hendley, who had allegedly been fired for testifying in favor of another injured employee, stated under leading questioning of appellee's counsel that he was apprehensive, afraid and nervous about "being in this courtroom [because] a similar situation arose approximately three years ago when I was called to be a witness. I

subsequently lost my job over it. [This man (Codgell) sitting here in their chair is the one that fired me. I had to stay out of work sixteen months.]" The "frightened" Hendley then proceeded to give a detailed description of the appellee's back and neck pain, debilitation and deterioration which he had observed. To another witness, who did not testify unfavorably to the appellee, appellee's counsel queried: "I notice that you're a little nervous. The man writing notes back here, grey hair, he's your boss, ain't he? [Objection overruled.] You see all this paper he's got back here and he's been writing on these notes. You see that paper laying in front of him? [Yes.] That's your boss that's writing these notes, is it not? [Yes.] That's Mr. W. D. Codgell. He's the man that signs these letters, 'Arrange to turn in all the company property in your possession. . . .' He's the one that signs these kinds of letters, isn't he? [I don't know, I never received one.] You ain't? [No.] Don't count on not receiving one. You know what he's putting on his list back there? Making a list and checking it twice, getting ready for you? [No, I don't.] But you do know that he had fired folks in the past? [Yes.] And you do know that he's fired people for coming into court and helping other people in [injury] cases, don't you? [Objection: That's inconsistent with the facts, Your Honor]. . . . You do know that they fired Jimmy Hendley. . . . That man right there is the man who done it, wasn't he? [Yes.] But you come in here to tell the truth, didn't you, Mr. Hall? [Yes.] And you're going to do it. . . no matter what he does and no matter what list he's making back here, is that correct?" To the third witness, appellee's counsel asked: "Are you afraid of Mr. Codgell? [No, sir.] You're not? [No.] Well, don't you know that he fired Jimmy Hendley for appearing in a liability case?" Objection was made but counsel for appellee Howard insisted this questioning was necessary to establish the credibility of these witnesses, to show they "have a reason to be afraid . . . and if his answers don't come out just right across the line, that this jury's got a right to know why they're not down the line, that he's concerned about his job . . . [I]n fact even if he tells it just like it happened, the jury can look at this man and know that he came down here under duress of losing his job and told the truth. . . . I want to show why the jury ought to believe him and they ought to believe Mr. Howard." Ultimately, the court permitted counsel to question this witness at length about fear of testifying and being fired.

The evidence allegedly intended to show these witnesses' fear, was not admissible to support these witnesses' veracity, and would not be admissible even if their testimony had conflicted with other evidence offered in support of the appellee. *Anderson v. Southern R. Co.,* 107 Ga. 500, 506 (33 SE 644); *Vernon v. State,* 49 Ga. App. 187, 191 (174 SE 548). Even if the appellant had attacked the credibility of

these witnesses, evidence of their alleged fear of the appellant would not have been admissible because they did not testify favorably to the appellant, and the appellee was not entitled to introduce any evidence in support of their credibility (*Anderson,* supra; *Vernon,* supra). The irrelevant evidence was grossly prejudicial to the appellant and, moveover, was presented in such a manner as to exaggerate its prejudice far beyond any merit it might in other circumstances have had. It was error to permit it.

2. The conduct of this trial contained such extensive and grossly improper prejudicial remarks directed at the appellant, that it is impossible for us to say the verdict was not infected with undue bias (Code Ann. § 105-2015). In opening statement, counsel for the appellee stated that because he was fired for discharging a weapon on a customer's property, the appellee "got the idea he was being railroaded" and hired counsel to represent him; that Mr. Codgell was the Railroad's "hatchet man," and "I'll state in my place that if [a] man testifies on behalf of the railroad, he's scared half to death [that he will be fired]." After mild admonition by the trial court, the attorney said: "I apologize for [calling Mr. Codgell] a hatchet. I did not mean that he had . . . a hatchet and went around cutting people with it. I [meant] he's the man that pulls the strings for hiring and firing . . . he is here for the purpose of if one of these witnesses. . . they are afraid. [Objection overruled.] When they sit down up here and say 'I'm a railroad man' and they say, 'Yes, I'm a friend of Sonny Howard,' you keep in mind that their job is on the line because they got the man who controls that particular aspect of their lives. They're going to tell you they're afraid of him. I agree with [counsel for defendant] that [the Railroad does] have a right to a representative [in court]. But . . . Mr. Codgell ain't been at not one of these depositions. He's their man in court and you figure out why he's here . . . What does this $11,084.93 [for lost wages] represent. . . . Well, let me tell you about that. This may be one of them prejudicial things, I don't know. It's something they did, if it's prejudicial, they done it. Last year Sonny Howard was working out here at Union Camp [switching train cars]. Sonny's back was bothering him, so he gets down off the engine . . . went to his car [and took a .22 rifle from the trunk and] shot it a few time to the tree . . . he lost his job. . . . He told them . . . that's what you're doing it to me for because I've been off with my back . . . they were after him . . . that man sitting right there in this courtroom was after him. . ."

The appellee testified that after he was injured Mr. Codgell harassed him by calling an investigation and firing him because of the shooting incident. Appellee's counsel fully explored the alleged firing of Mr. Hendley for helping another employee in an injury case, even

referring to a $300,000 settlement paid by the Railroad to settle Mr. Hendley's claims; he asked Mr. Codgell if the Railroad had violated criminal statutes in Mr. Hendley's case, and if he knew Mr. Hendley had a wife and three kids, one of whom was retarded, and whether Mr. Hendley's wife should be proud of Mr. Hendley.

In closing argument, one of appellee's counsel stated that no matter "how big a company is, how much money it's got how . . . powered a lawyer they can hire," the individual has a right to a fair shake; that appellant was "a very wealthy company" and that to the corporation a jury verdict was nothing more than an entry of an "X" in the account books, but Sonny Howard has no ledger to make an entry on; that "apparently [Mr. Codgell's] only participation as far as the trial is concerned was to be here. You know there's a lot of people who have a Sunday School face and a Saturday night mind. . . . You've heard the expression hard ball? You've never seen a hard ball in your life until you start moving against big companies like this . . . thank the Lord for people like [appellee's lead counsel] who is willing to take them on. He's not going to bow and scrape to them. He's going to represent his people. You now have an opportunity to represent the interest of this individual now. . . ." Appellee's lead counsel then said: "Sonny Howard . . . has faced a lot of persecution and opposition . . . Jimmy Hendley supplied me with the greatest day that I'll ever realize in the law profession. He permitted me to represent him in the most hideous and atrocious action that has ever been brought against any individual in this modern world [and] the reason Jimmy Hendley's situation was brought into this court was to go straight to the credibility of these people that come in here and testified . . . if you don't have anything to lose it's easy to . . . testify. But when somebody has that baseball bat over your head and will knock a knot upside your head that big . . . you can believe what [these] people say that come into court . . . because Mr. Codgell fired him. . . . Whenever you go any place, even the man that has done you the dirtiest, the low downdest thing that ever happened to you, takes the stand, the best that he can say . . . loyal, honest, good family man, but you fired him, didn't you . . . it tells you something about the quality of a man that would do that . . . I shed tears the day that Fifth Circuit Court . . . said [to the Railroad] you are a law violator, you mistreated the loyal family man. [About the shooting incident], seems like Mr. Codgell and Union [Camp] got something going out there. . . . [the appellee] felt that he was [fired because of his injury] and you people can conclude that he was. . . . these letters [of dismissal for firing a gun on customer's property] is as cold blooded as you'll ever read. They don't say, 'Mr. Howard we're giving you fifteen days to think this thing over and be sure you don't do it no more'. . . . [Mr. Howard admitted he

shot the gun] and that was just the honesty that got him [shot] right between the eyes. They just took the .22 rifle and turned it around on him and blew his brains out as hard as they could. . . . How humiliated would you be? This is the most degrading and loathful thing that can happen to anybody . . . It wasn't degrading to this southern gentleman [Codgell] . . . and it don't make any difference if this railroad has to spend out ten million dollars . . . [Mr. Codgell will] still have his job because he is a white collar man. . . . 'I just shot three folks, I just took three people's jobs away from them, but I'm doing well.' Don't you think [fifteen days suspension] would have been enough with a guy saying, 'I'm sorry, I'm sorry, I'm sorry. Don't whup me, don't whup me no more. Don't hit me no more. I won't do it, I do it no more.' " And on and on.

The arguments of counsel and the injection of irrelevant material were so abominably inflammatory and prejudicial that it is impossible to say the verdict was unaffected thereby. The only issues in this case were whether and to what extent the train accident proximately injured the appellee. Even if the appellee had been wrongly and injuriously fired not because he fired a weapon on the job but because he had lost work time and made personal injury claims against the Railroad, this is clearly not an injury proximately caused by the train accident and is not a matter addressable in this proceeding. It is irrelevant. The remarks and evidence concerning this and Jimmy Hendley's firing and the witnesses' fear of testifying were inadmissible and irrelevant. They served only to engender prejudice against the appellant Railroad as being a powerful wealthy monolith which, with the help of its evil servant Mr. Codgell, continuously browbeats its employees, commits vicious criminal acts against the ordinary working man and does the "dirtiest, the low-downdest" things to the loyal family man. Appellee's counsel even strongly suggested to the jury that this case was their chance to stand up to the Railroad and punish its villainy. The language and irrelevant evidence used "was so calculated to prejudice the jury against [the] railroad [company], that it is extremely doubtful if its injurious effects could have been cured by any rebuke of the court or by any instructions to the jury. A mistrial was the only remedy." *Southern R. Co. v. Gentle,* 36 Ga. App. 11, 13 (135 SE 105). The case is reversed. See esp. *Georgia Power Co. v. Puckett,* 181 Ga. 386 (182 SE 384); *Western &c. R. Co. v. Cox,* 115 Ga. 715, 717 (42 SE 74).

*Judgment reversed. Shulman, P. J., and Sognier, J., concur.*

Decided February 26, 1982 —
Rehearing denied March 10, 1982 —

*J. B. Miller,* for appellant.

*Billy E. Moore, John F. Cameron, John Wright Jones, J. Sherrod Taylor,* for appellee.