A92A2122. NORFOLK SOUTHERN RAILWAY COMPANY
v. THOMPSON.
(430 SE2d 371)

BEASLEY, Judge.

Thompson, a machinist for Norfolk Southern Railway Company, slipped and fell on company premises, causing a ruptured disc which was surgically removed and a bulging disc which is inoperable. He instituted this FELA action, alleging negligence by Southern in allowing oily substances to accumulate on the floor. The jury returned a verdict in favor of Thompson for $594,396. After deducting Thompson's railroad retirement benefits and supplemental sickness benefits pursuant to a pretrial stipulation, the court entered final judgment of $585,142.30.

1. Southern contends that the trial court erred in denying its extraordinary motion for new trial on grounds of newly discovered evidence.

Southern's position at trial was that Thompson was physically able to perform his job and that he was feigning disabling injuries in order to obtain disability benefits.

In its motion for new trial, Southern submitted an affidavit of one of its supervisory employees that approximately one week after final judgment was entered, Thompson telephoned the affiant, informed him that he was feeling "pretty good" and wanted to return to work at his old position, and that he presented a release from his treating physician, Dr. Sendele.

Thompson denied telling this employee that his medical condition had changed or that he wanted, or was able, to return to work at his old position, and Thompson submitted medical forms from Dr. Sendele in which he had actually placed restrictions on Thompson more stringent than those he had previously imposed.

"Newly discovered evidence which shows a condition of the injured person after the trial inconsistent with the showing of his condition made on the trial must be of such decisive character as to indicate that the verdict would have been different, or indicate that the plaintiff's claim in the first instance was based on fraud and conceal-

ment. [Cits.]" *Atlantic Coast Line R. Co. v. Smith*, 107 Ga. App. 384, 388 (7) (130 SE2d 355) (1963); see *Perry v. Hammock*, 75 Ga. App. 171, 172 (2) (42 SE2d 651) (1947). "The grant or denial of a new trial on account of newly discovered evidence is within the discretion of the trial judge, and his discretion will not be disturbed unless abused. [Cits.]" *Atlantic Coast Line*, supra at 388. The trial court did not abuse its discretion in denying the motion.

2. Southern contends that the trial court erred in refusing to grant a mistrial when Thompson's attorney argued to the jury that Thompson's exclusive remedy was under the FELA and that he had no other option whatsoever.

Thompson's attorney stated in his opening statement that Thompson's remedy against his employer is under the FELA rather than workers' compensation law, and "[t]hat's the exclusive remedy and that's why we are here." Counsel also stated that Thompson is not covered by Social Security and that he did not have an independent source of health insurance or major medical benefits beyond two years.

In her opening statement, Southern's attorney responded that when plaintiff's counsel stated that this FELA action "is his exclusive remedy and that the only offset he will get is a pension, what they are not telling you is about the benefits that are available now and that he is receiving."

In questioning Thompson, his attorney asked about the benefits he was receiving as referenced in Southern's opening statement. Thompson stated that she was probably talking about his savings, which he had depleted, as a result of which he could not "pay off" his house. Southern objected on the ground that such matters have been "ruled to be irrelevant in a FELA suit." Thompson's attorney responded that under Georgia law a person's financial difficulty is admissible on the question of mental pain and suffering. The trial court then overruled Southern's objection. Southern then elicited testimony from Thompson on cross-examination that he was receiving sickness benefits from Southern and was eligible for railroad retirement sickness benefits.

In closing argument, Southern's attorney stated that Thompson was not going to be and never has been penniless and that he "has lots of options and one of his options is he can bring this lawsuit, which he has done." Thompson's attorney responded that he has no other option, that this is his exclusive remedy. Southern objected and moved for a mistrial, stating, "[w]e discussed this in chambers the other day and this is a misstatement by [counsel]." The court overruled the objection and denied a mistrial.

In a FELA case it is improper for the plaintiff to state to the jury that the FELA action is plaintiff's exclusive remedy. *Stillman v. Nor-*

*folk & Western R. Co.*, 811 F2d 834, 838 (9) (4th Cir. 1987); *Kodack v. Long Island R. Co.*, 342 F2d 244, 247 (3) (2nd Cir. 1965); *Tucker v. Kansas City Southern R. Co.*, 765 SW2d 308, 311 (3) (Mo. App. 1988); see also *Foster v. Crawford Shipping Co., Ltd.*, 496 F2d 788, 792. (7) (3rd Cir. 1974) (holding that references to plaintiff's straitened financial condition were improper in a personal injury action by a longshoreman). Conversely, it is improper for the defendant to state to the jury that plaintiff is in receipt of benefits from a collateral source such as the Railroad Retirement Board. *Stillman*, supra.

Consequently, Thompson's attorney's statements to the jury concerning this action being Thompson's exclusive remedy, Southern's response, and the rebuttals which followed were all improper.

On the one hand, there are cases holding that "[t]he fact that counsel for one party has used improper argument to the jury will not justify or authorize counsel for the opposing party to do likewise, under the principle of law that *injuria non excusat injuriam.* [Cit.]" *Banks v. Kilday*, 88 Ga. App. 307, 311 (2) (76 SE2d 642) (1953). It also has been held that where counsel makes improper argument and there is an objection, it is the duty of the court to rebuke counsel and give curative instructions to the jury or declare a mistrial. See *Ga. Power Co. v. Puckett*, 181 Ga. 386, 394 (3) (182 SE 384) (1935). On the other hand, it has been held that a party cannot during trial ignore what he or she thinks to be an injustice, take a chance on a favorable verdict, and complain later. *Wright v. Wright*, 222 Ga. 777, 781 (4) (152 SE2d 363) (1966).

Southern's attorney moved for a mistrial only after meeting the issue head on and Thompson's attorney responded. Under all of the circumstances, the court's refusal to grant the mistrial was not a manifest abuse of discretion. See *Walker v. Bishop*, 169 Ga. App. 236, 241 (8) (312 SE2d 349) (1983); *Turner v. Wilmouth*, 161 Ga. App. 2, 4 (3) (288 SE2d 839) (1982).

3. Southern contends that the trial court erred in refusing to declare a mistrial when Thompson's attorney in cross-examining Gentry, Thompson's general foreman, alluded to a conference in which Thompson had been told that if he got hurt again he would be fired.

On direct examination by Southern, Gentry testified to discussions he had with Thompson after his injury, about doing his work safely without worsening his condition. On cross-examination, Thompson asked Gentry if he was involved in the conference in which Thompson was told that if he got hurt again he would be fired. Counsel stated that he asked this question because Thompson had told him that there had been such a conference. Southern objected, stating that Gentry could be asked if he had made such a statement but otherwise the question was improper. The court ruled that Gentry could answer the question. He then testified that although he was not in-

volved in that conference, he was aware that it had taken place and that it involved the assistant superintendent Corbin.

Southern later moved to strike this testimony as hearsay, but when the court offered to allow Thompson to reopen the evidence in order to present direct testimony concerning the conference, Southern argued that such testimony would be inadmissible under *Central of Ga. R. Co. v. Howard*, 161 Ga. App. 560 (288 SE2d 347) (1982). Thompson responded that Southern opened the door to such testimony. The court disagreed, although it stated it could understand why Thompson's attorney felt otherwise.

Southern took the position that the grant of a mistrial was required because a curative instruction to the jury could not remove the prejudice. The court disagreed and Southern moved the court to rebuke Thompson's attorney in addition to giving a curative instruction. The court instructed the jury to disregard any references by Thompson's attorney to any threats by Southern and not to take such into consideration in deciding the case, that counsel's statement was improper, and that counsel would like to apologize for making that statement, which he did. Southern's attorney referenced this issue in her closing argument, whereupon Thompson raised an objection which the court sustained.

We do not find any abuse of discretion on the part of the trial court in instructing the jury to disregard the testimony and rebuking counsel rather than granting a mistrial. See *Ga. Power Co. v. Puckett*, supra; *Ga. Northern R. Co. v. Hathcock*, 93 Ga. App. 72, 74 (3) (91 SE2d 145) (1955); compare *Central of Ga. R. Co. v. Howard*, supra.

4. Southern contends that the trial court erred in granting Thompson's motion to quash Southern's notice to produce ex parte statements of Southern employees Shockey and Brown. The court granted the motion, based upon discussions between counsel and the court in chambers and unreported, so the reasons do not appear of record. If the court's action was correct for any reason, it will be affirmed. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991).

Shockey, employed as a machinist in the assembly shop, testified that he worked with Thompson, and he described their job responsibilities as well as Thompson's attempts to perform his job after the accident. Brown, a pipe fitter who worked in the assembly shop with Thompson and was a safety committeeman at the time of Thompson's injury, testified that when employees complain about a dangerous condition he reports it to company representatives such as the shift supervisor or assistant manager; that employees had been complaining about this dangerous condition for a couple of weeks before Thompson's accident; and that at that time nothing had been done about it. The trial court charged the jury that the knowledge of an

agent, servant or employee of the railroad is deemed to be the knowledge of the railroad itself.

OCGA § 9-11-26 (b) (1) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." However, OCGA § 9-11-26 (b) (3) states that "a party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (1) of subsection (b) of this Code section and prepared in anticipation of litigation or for trial . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." See *Lowes of Ga. v. Webb*, 180 Ga. App. 755, 756 (350 SE2d 292) (1986).

Since Thompson called Shockey and Brown to testify at trial, it is apparent that the material sought was prepared in anticipation of litigation, as part of plaintiff's investigation for the purpose of determining whether to file suit. However, Southern did not show nor does it argue that it could not have obtained the statements of the witnesses, who were its own employees, directly from them. Under OCGA § 9-11-26 (b) (3), the recorded statements would be privileged work-product material and not discoverable.

Nonetheless, Southern argues that the privilege does not protect this work-product because Thompson's attorney obtained these statements in violation of Standard 47 of Rule 4-102 of the Rules and Regulations of the State Bar of Georgia. Standard 47 provides: "During the course of his representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior written consent of the lawyer representing such other party or is authorized by law to do so. A violation of this standard may be punished by a public reprimand."

State Bar of Georgia Formal Advisory Opinion 87-6 (87-R2), issued by the Supreme Court on July 12, 1989, states that under Standard 47: "An attorney may not ethically interview an employee of a corporation which is an opposing party in pending litigation without the consent of the corporation or the corporation's counsel where the employee is either: 1) an officer or director or other employee with authority to bind the corporation; or 2) an employee whose acts or omissions may be imputed to the corporation in relation to the subject matter of the case."

Neither Southern nor Southern's counsel gave consent for plaintiff to interview its employees. In fact, Southern's counsel specifically told plaintiff's counsel that Southern did not consent to such interviews. It does not appear that this or the interviews occurred after suit had been filed.

Thompson responds that in obtaining these ex parte statements from Southern's employees, counsel's conduct was protected by FELA provision 45 USC § 60, which provides in pertinent part: "Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense."

In *Hendley v. Central of Ga. R. Co.*, 609 F2d 1146, 1150 (5) (5th Cir. 1980), a railroad employee was charged by it with disloyalty because he assisted a fellow employee in his FELA action against the railroad. The railroad discovered it after the fact. The employee had met with the injured employee, at the latter's request, and his attorney on the property where the injury occurred, discussed with them the physical layout of the tracks, and gave a deposition to be used in the case. The court held that this conduct fell within the protection of 45 USC § 60 so that the employee could not lawfully be subject to disciplinary action for it. Cf. *Woodrum v. Southern R. Co.*, 750 F2d 876, 883 (11th Cir. 1985).

Just as the railroad could not discipline an employee who has furnished information in such cases, so conversely, it could not prevent the injured employee from obtaining such information. Southern could not lawfully withhold its consent to the interviews of the plaintiff's fellow employees Shockey and Brown. As said in *Dugger v. Baltimore & O. R. Co.*, 5 F.R.D. 334, 336 (1, 2) (E.D. N.Y. 1946): "The purpose of . . . Section 60 was to protect employees. The intention of the Congress was to see to it that an injured employee could readily obtain all the available information from witnesses, particularly employees of the railroad company. It was made a criminal offense for any one to attempt to prevent any person from voluntarily furnishing information concerning an accident to a person in interest. An injured employee would be one of such persons." Withholding consent would "chill justifiable FELA claims" (in the words of *Stack v. Chicago, Milwaukee St. Paul & P. R. Co.*, 94 Wash.2d 155 (615 P2d 457, 459 (3)) (1980), regarding another device) by attempting to prevent, and perhaps succeeding in preventing, injured employees from discovering the facts.

Since the federal law under which Thompson's action was

brought protects his access to co-employees for information relating to it, Thompson's attorney did not violate Standard 47 by obtaining the recorded statements of co-employees Brown and Shockey. His communication with them was not unethical, because he was "authorized by law to do so." Consequently, the statements were protected from discovery by OCGA § 9-11-26 (b) (3), and the court did not err in granting Thompson's motion to quash the notice to produce them. Cf. *Cagguila v. Wyeth Laboratories*, 127 F.R.D. 653 (E.D. Pa. 1989), and *University Patents v. Kligman*, 737 FSupp. 325 (E.D. Pa. 1990), which cases did not involve FELA.

5. Southern contends that the court erred in refusing to grant a mistrial because of Thompson's testimony that his savings had been depleted and he could not pay off his house, as well as Thompson's attorney's statements that shoes worn by Thompson at the time of his accident had not been submitted as an exhibit because he needed to wear them and that he, counsel, had to lend Thompson a sport coat to wear at trial.

As stated in Division 2, the court overruled Southern's objection to the testimony concerning Thompson's depleting his savings and being unable to pay off his house. While cross-examining Thompson concerning the shoes he had been wearing at the time of the accident, Southern's attorney stated that she thought the shoes would have been produced in court since they were listed as an exhibit. Thompson's attorney responded that "[t]he man needed the shoes, in fact, he borrowed that sport coat from me." After Southern's cross-examination of Thompson ended and the proceedings resumed after a noon recess, Southern sought a mistrial because of counsel's remarks concerning the shoes and sport coat. The court refused but stated it would instruct the jury to disregard counsel's remarks. It did so concerning the coat but did not mention the shoes. Southern did not call this omission to the court's attention. We do not find the corrective action so insufficient, or the underlying bases for the motion so prejudicial that a mistrial was essential to preserve the right of fair trial. See *Interstate Life &c. Co. v. Brewer*, 56 Ga. App. 599, 611 (8) (193 SE 458) (1937).

6. Southern contends that the court erred in admitting the "Lawshe Report" in evidence and in allowing Dr. Windsor, a specialist in the area of physical medicine rehabilitation who performed an independent medical evaluation of Thompson, to testify based on the Report because it was hearsay.

The Lawshe Report is a job analysis summary of the physical and environmental conditions for the job of machinist developed by a task force representing ten railroads including Southern. The report was prepared under the direction of C. H. Lawshe, Ph.D., an independent industrial psychologist. Thompson obtained this report from South-

ern during discovery.

At trial, Southern argued that Thompson could describe his job and did not need the out-of-court statements of a psychologist who was not subject to cross-examination. Thompson testified that in performing his job as a machinist he did "everything in that book," which he had read, and he was subject to cross-examination. Dr. Windsor was questioned concerning Thompson's ability to perform the functions stated in the report. Through cross-examination, Southern's attorney pointed out job functions contained in the report which Thompson did not perform.

On appeal, the authority cited by Southern in support of its argument that a doctor cannot give an opinion based upon hearsay is *Hyles v. Cockrill*, 169 Ga. App. 132, 134 (4) (312 SE2d 124) (1983), which holds that an expert may give an opinion based upon the facts testified to by other witnesses, but not upon their opinions. But compare *Queen v. Bair*, 137 Ga. App. 30, 31 (2) (223 SE2d 8) (1975) (holding that an expert may base his opinions on information obtained from books rather than experience, although the books themselves are not admissible). See *Brannen v. Prince*, 204 Ga. App. 866, 868 (4) (421 SE2d 76) (1992).

*Hyles* is inapposite because in this case the expert was basing his opinions on facts in the report and not other expert opinions. Although the facts contained in the report constituted hearsay evidence insofar as they came from Lawshe, they did not constitute hearsay evidence insofar as they came from Thompson, because he testified that he did "everything in the book." In addition, it was a job description certified by Southern's general foreman as "accurately and fairly represent[ing] the job. . . ." Thompson merely substituted his written job description as set forth in the report for his oral testimony as to the precise specifics of his job. Since Thompson was subject to cross-examination as to job functions in the report that he did not perform, Southern's inability to cross-examine Lawshe provides no reason to reverse.

As to Dr. Windsor's testimony regarding his medical evaluation of plaintiff's ability to perform the job described in the report, it was not inadmissible because it constituted a hypothetical based on evidence already admitted. In other words, his opinion of whether Thompson, whom he had examined, could fulfill the job duties was not rendered inadmissible because it was based on the job description. See *Altamaha Convalescent Center v. Godwin*, 137 Ga. App. 394, 397 (3) (224 SE2d 76) (1976).

7. Southern contends that the court erred in allowing testimony that on prior occasions other people had slipped in the same area where Thompson's injury occurred for the same reason that Thompson fell, i.e., the floors were oily because of inadequate drainage.

Although the conduct of the parties in other transactions is generally irrelevant, OCGA § 24-2-2, evidence as to injuries sustained by other parties on prior occasions may be admitted for the purpose of showing that the defendant had been given notice of a dangerous condition and was thus negligent in allowing it to continue. See *Wright v. Dilbeck*, 122 Ga. App. 214, 216 (4) (176 SE2d 715) (1970). There must be a showing that the conditions were so similar as to carry probative weight. *Sammons v. Webb*, 86 Ga. App. 382, 388 (6) (71 SE2d 832) (1952). Such showing was made here by Thompson's testimony that the condition existed for a long time, and had been reported by him at safety meetings for years. That it may have been contradicted by subsequent testimony, as argued by Southern, goes to the weight of the evidence and not its admissibility. Moreover, the contradiction does not appear to exist, as plaintiff testified that others slipped but did not fall; he never said anyone before him had fallen and reported injury. Knowledge of the dangerous work condition by the defendant was relevant to its liability for the employee's resultant injury. *Wright v. Dilbeck*, supra.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MARCH 10, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993 

*Branch, Pike & Ganz, Eileen M. Crowley, Daryl G. Clarida*, for appellant.

*Jones & Granger, C. Michael Hardman*, for appellee.

