**John W. BLASENA, Plaintiff,**

**v.**

**CONSOLIDATED RAIL CORPORATION, d/b/a Conrail, a Pennsylvania corporation, Defendant.**

**Civ.A. No. 93–4969.**

United States District Court, D. New Jersey.

Oct. 6, 1995.

Alan York Medvin, Medvin & Elberg, Newark, NJ, for John W. Blasena.

Thomas Conan Hart, Ruprecht & Hart, Millburn, NJ, for Consolidated Rail Corporation.

### OPINION

CHESLER, United States Magistrate Judge.

This matter comes before the Court on the application of defendant Consolidated Rail Corporation ("Conrail") for an order barring counsel for plaintiff from conducting "*ex parte*" interviews of defendant's employees and seeking additional relief with regard to such interviews which have already occurred. The motion was referred to the undersigned by the Honorable Harold A. Ackerman, U.S.D.J. Oral argument was held on September 27, 1995.

### BACKGROUND

This lawsuit was brought pursuant to the Federal Employer's Liability Act, 45 *U.S.C.* § 51 et seq. (FELA). On March 22, 1993 plaintiff John Blasena, a Conrail employee, was severely injured while working at the Oak Island departure yard in Newark, New Jersey. At the time of the accident, Plaintiff

---

was employed as a car inspector by Defendant.

Plaintiff contends that Conrail failed to develop appropriate procedures for the safe movement of trains in and out of the departure yard, and that this failure on Conrail's part caused plaintiff's accident.

During the course of discovery, Conrail's attorney advised plaintiff's counsel that he should give Conrail advance notice of any attempts to communicate with Conrail employees so that counsel for Conrail could be present at these interviews. *See* correspondence of Adele C. Baker, Esq. dated August 1, Defendant's Exhibit A.

Plaintiff's counsel subsequently advised defense counsel that he was in possession of interviews of Conrail employees Stuart Miller, Frank Garrison, John Piscal, Randall Kumpf, Roger Rinfret and Charles Stehanacs. (*See* correspondence of Alan Medvin, Esq. dated July 25, 1995, Defendant's Exhibit B.) There is no dispute that these interviews were conducted without giving notice to Conrail's counsel, who was thus not present when the interviews were conducted.

Counsel for Conrail thereafter wrote to Plaintiff's attorney requesting that counsel refrain from further *ex parte* contacts with Conrail employees. Conrail also requested that counsel turn over all statements obtained from Conrail employees. (*See* correspondence of Thomas C. Hart, Esq. dated July 27, 1995, Defendant's Exhibit C.)

Mr. Blasena's attorney refused to comply with Conrail's request. (*See* correspondence of Alan Medvin, Esq. dated July 31, 1995, Defendant's Exhibit D.) Conrail now seeks an order compelling Plaintiff to provide copies of these employee statements to Defendant, and a protective order including one or more of the following remedies: 1) barring plaintiff's attorney from conducting further *ex parte* interviews, 2) barring plaintiff from using the information obtained in any fashion to advance this litigation, calling these witnesses or using the information as evidence at trial and 3) disqualifying plaintiff's attorneys and agents who have had access to this information from further participation in this litigation.

## DISCUSSION

Defendant's application is based on Rule of Professional Conduct (RPC) 4.2 which provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in this matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

■ This provision of the Rules of Professional Conduct of the American Bar Association is applicable to this case pursuant to Local Rule 6A of the U.S. District Court for the District of New Jersey which provides:

> The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

*R.* 6. The Rules' clear intent is that the ethical rules imposed on federal practitioners in New Jersey are the same as those imposed on all New Jersey attorneys by the New Jersey Supreme Court pursuant to *R.* 1:14. *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1113–14 (D.N.J.1993); Lite, Federal Practice Rules, Comment Rule 6.[1]

It is defendant's contention that Plaintiff's counsel's interviews violated the current interpretation of this Rule, as applied to a corporate party. In support of this contention, Defendant relies on an interim interpre-

1. While Local Rule 6A requires this Court to adhere to the RPC's as "revised by the New Jersey Supreme Court" nothing in the rule suggests that this Court is required to follow interpretations of the RPC enunciated by the New Jersey courts—as counsel for plaintiff argues in his brief (see p. 12). Thus, the interim opinion of the New Jersey Supreme Court in *Matter of Advisory Committee* 134 N.J. 294, 633 A.2d 959 (1993) interpreting RPC 4.2 is not binding on this Court. Nevertheless, its interpretation of the Rule constitutes weighty persuasive authority and should not lightly be disregarded.

tation of RPC 4.2 issued by the New Jersey Supreme Court, *Matter of Advisory Committee*, 134 N.J. 294, 633 A.2d 959 (1993) and a number of decisions from the New Jersey District Court. *See e.g. Hanntz v. Shiley, Inc. a Div. of Pfizer, Inc.*, 766 F.Supp. 258, 265 (D.N.J.1991); *Goff v. Wheaton Industries*, 145 F.R.D. 351 (D.N.J.1992); *Public Service Elec. and Gas Co. v. Associated Elec. Gas and Ins. Services, Ltd.*, 745 F.Supp. 1037, 1039 (D.N.J.1990). Plaintiff contends that the individuals who were interviewed do not fall within the class of employees covered by RPC 4.2—at least as that rule is currently interpreted by the New Jersey Supreme Court. *See Matter of Advisory Committee, supra.*

More significantly, Plaintiff also contends that the provisions of Tile 45 U.S.C. § 60, which protect the right of a plaintiff in a case brought under the F.E.L.A. to obtain information in support of his claim, bar the application of RPC 4.2 in this case. Because, as discussed below, the Court concludes that this contention is correct and that § 60 does indeed "trump" RPC 4.2 in F.E.L.A. cases, the Court need not determine whether or not some or all of the employee interviews would otherwise be prohibited by RPC 4.2.[2]

### TITLE 45 U.S.C. § 60

Title 45 U.S.C. § 60 provides as follows: [A]ny contract, rule, regulation, or device whatsoever, the purpose, intent or effect of which shall be to prevent employees of any common carrier from furnishing voluntary information to a person in interest as to the facts incident to the injury or death of any employee, shall be void. And whoever, by threat, intimidation, or rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be

punished by a fine of not more than one thousand dollars or imprisonment for each offense. Provided, that nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

Thus, the issue before the Court is whether a rule which would bar interviews of railroad employees concerning their knowledge of a co-employees' accident, without the railroad's consent, constitutes a "rule, regulation or device . . . the purpose, intent or effect of which shall be to prevent employees . . . from furnishing voluntary information to a person in interest as to the facts incident to the . . . injury of any employee."

This question must be answered in light of the historical purpose of § 60. As noted by the Court in *Cavanaugh v. Western Maryland Railway Company*, 729 F.2d 289, 293 (4th Cir.1984) (Quoting *Stark v. Burlington Northern Inc.*, 538 F.Supp. 1061, 1062 (D.C.Colo.1982)):

The intent of the section was to attempt to equalize the access to information available to the highly efficient claim departments of the railroads and to the individual F.E.L.A. claimants, and to prohibit the promulgation and enforcement of rules which would *inhibit the free flow of information* to claimants. See Senate Report No. 661, 76th Cong., 1st Sess. 2, 5 (1939). Its authors recognized the danger "that railroad agents would coerce or intimidate employees to prevent them from testifying." [citation omitted]. The broad prohibition, "by threat, intimidation, order, rule, contract, regulation or device," indicates that *§ 60 was designed to prevent any direct or indirect chill* on the availability of information to any party in interest in an F.E.L.A. claim. Therefore, the Act is to be read liberally. *Stack v. Chicago, M.St.P. & P.R. Co.*, 94 Wash.2d 155, 615 P.2d 457 (1980). [emphasis added].

---

**2.** RPC 4.2 specifically permits communications between an attorney and a represented party if the attorney "is authorized by law to do so." Thus, if, as plaintiff contends, § 60 constitutes a statutory authorization for such conduct, the ex parte communications in question here would clearly be proper.

Accord *Sheet Metal Workers International Association v. Burlington Northern Railroad Company,* 736 F.2d 1250, 1252 (8th Cir.1984) (noting that the purpose of § 60 is to "equalize the access to accident information," prohibit the enforcement of rules "inhibiting the full flow of accident information" and to permit those with such information "to give statements to the injured employee").

■ Viewed against this background, it clearly appears that a rule which requires the defendant railroad's attorney to give his or her consent before Plaintiff's counsel may interview railroad employees about an accident does indeed have the "purpose, intent, or effect" of preventing co-employees from "furnishing voluntary information" to plaintiff's lawyer. At a minimum, applying RPC 4.2 in this case would constitute an "indirect chill on the availability of information," by requiring permission before an interview could be conducted. This is precisely the conclusion reached by the Georgia Court of Appeals in *Norfolk Southern Railroad Company v. Thompson,* 208 Ga.App. 240, 430 S.E.2d 371 (1993). There, the Court, in determining whether its own version of RPC 4.2 barred such employee interviews without defendant railroad's consent, concluded that under § 60, the railroad "could not lawfully withhold its consent to the interviews of the plaintiff's fellow employees." *Id.* 430 S.E.2d at 376. In reaching this conclusion, the court reasoned:

"The purpose of ... Section 60 was to protect employees. The intention of the Congress was to see to it that an injured employee could readily obtain all the available information from witnesses, particularly employees of the railroad company. It was made a criminal offense for any one to attempt to prevent any person from voluntarily furnishing information concerning an accident to a person in interest. An injured employee would be one of such persons." Withholding consent would "chill justifiable FELA claims" ... [citations omitted] by attempting to prevent, and perhaps succeeding in preventing, injured employees from discovering the facts.

*Id.* The Court therefore concluded:

Since the federal law under which Thompson's action was brought protects his access to co-employees for information relating to it, Thompson's attorney did not violate [the applicable ethical rule] by obtaining the recorded statements of co-employees. His communication with them was not unethical, because he was "authorized by law to do so."

*Id.*

A similar conclusion was reached in *Harper v. Missouri Pacific Railroad Company,* 264 Ill.App.3d 238, 201 Ill.Dec. 760, 636 N.E. 2nd 1192 (1994), where a worker sought to enjoin the railroad from enforcing a policy of requiring notice of and consent to interviews with employees about F.E.L.A. claims. The issue arose after defendants mailed a letter to plaintiff's counsel which asserted that state ethical rules barred such interviews absent prior notice and consent.

In upholding the issuance of an injunction against defendant railroad, the court concluded that the obvious purpose of the railroad was to restrict plaintiff's access to information. The Court said:

We cannot conceive, nor is it seriously suggested by the defendants, that there is any purpose for sending the form letters to all FELA claimants' attorneys other than to restrict claimants' attorneys from obtaining information from railroad employees about the facts incident to the injury or death of an employee.

*Id.* at 250, 201 Ill.Dec. at 769, 636 N.E.2d at 1201.

Indeed, in *Harper,* the railroad conceded that this conduct was barred by § 60. Thus, the court noted:

In fact, the railroad does not deny that the portion of the letter requiring prior knowledge and consent of the railroad before an attorney interviews "any railroad employees" is a clear violation of section 60.

*Id.* at 250, 201 Ill.Dec. at 769, 636 N.E.2d at 1202.

Despite the rather clear purpose of § 60, as discussed in the *Harper, Thompson,* and *Cavanaugh* cases, it appears that some federal courts have given the section an extremely restrictive interpretation.

In *Garrett v. National Railroad Corp.*, 1990 WL 122911 (E.D.Pa.1990) the Court held:

> While [45 U.S.C. § 60] prevents the railroad from hindering or preventing any employee "from furnishing voluntarily information to a person in interest" regarding the facts the facts of an accident, it does not authorize plaintiff's counsel to communicate with an employee ex parte in violation of Rule 4.2 once litigation has begun. Section 60 only prohibits the railroad from, through a policy or practice of intimidation or otherwise barring employees from furnishing information regarding the facts of an accident voluntarily.

*Id.* at *2.

A similarly restrictive interpretation was espoused by the courts in both *Queensberry v. Norfolk and Western Railway*, 157 F.R.D. 21 (E.D.Va.1993) and *Tucker v. Norfolk and Western Railway*, 849 F.Supp. 1096 (E.D.Va. 1994). These courts reached the conclusion that, although under 45 U.S.C. § 60, a railroad:

> may not lawfully withhold consent to interviews of its employees by a FELA plaintiff or his counsel ... to state that a railroad must consent to such interviews, however, is not to say that such interviews may be conducted ex parte in violation of state ethics rules. Instead, such interviews are subject to the same ethical restrictions that are encountered by counsel for parties in all other cases involving a corporate defendant or plaintiff. Absent consent of the defendant railroad's counsel, the desired information must be accessed through normal discovery methods ...

*Tucker,* 849 F.Supp. at 1101 (quoting *Queensberry,* 157 F.R.D. at 25).

This Court rejects the view espoused in the *Garrett, Tucker* and *Queensberry* decisions. Requiring Plaintiff to either obtain Defendants consent to employee interviews, or to conduct formal depositions, clearly has the effect of discouraging co-employees from providing information relating to FELA claims. At a minimum such a requirement has a potentially inhibiting effect on the willingness of employees to step forward and share candid information with an injured plaintiff. Rules which have such an inhibiting effect are, plainly and simply, barred by the clear language of Section 60.

The *Garrett, Tucker* and *Queensberry* decisions ignore the purpose of § 60—to put plaintiffs on an *equal* footing with railroads in obtaining information. To permit a defendant to conduct unlimited ex parte interviews of railroad employees in the course of preparing a defense, while requiring plaintiff's counsel to either obtain consent for interviews or utilize formal discovery devices (i.e. depositions) to obtain similar information negates the entire purpose of the statute. As noted in the Senate Report on the act:

> In relation to the investigation of facts upon which claims for injuries are based, humanity and justice demand the injured railroad men be accorded as much freedom of action as their employers enjoy.

S.Rep. No. 661, 76th Cong. 1st Sess. 5 (1939).

Thus, in this Court's view, any rule which requires the railroad to consent to the interview of an employee, or which requires the presence of a railroad representative during such an interview, flies squarely in the face of the unequivocal language of § 60, and cannot be sustained.

### CONCLUSION

For the foregoing reasons, Defendant's application for an order barring Plaintiff's counsel from conducting *ex parte* interviews of Defendant's employees must be denied. Additionally, because the additional relief sought by Defendant was based on the assumption that such interviews violated the Rules of Professional Conduct, the request for additional relief must also be denied.[3] An appropriate order will issue.

### ORDER

This matter comes before the Court on the application of defendant Consolidated Rail

---

**3.** Some of the interview statements obtained by Plaintiff may ultimately be reviewed or relied on by Plaintiff's expert in formulating his or her opinion. Any statements reviewed or relied upon by an expert in formulating an opinion shall be provided to counsel for Defendant at the same time that the expert report is served.

Corporation ("Conrail") for an order barring counsel for plaintiff from conducting *ex parte* interviews of defendant's employees and seeking additional relief with regard to such interviews which have already occurred; and the Court having considered the arguments of counsel; and for good cause having been shown;

IT IS ON THIS 6th day of October, 1995;

ORDERED that defendant's motion to bar plaintiff's counsel from conducting *ex parte* interviews of defendant's employees is hereby denied; and it is further

ORDERED that defendant's motion for additional relief based on the assumption that the aforementioned interviews violated the Rules of Professional Conduct is hereby denied; and it is further

ORDERED that any statements made by defendant's employees during an *ex parte* interview that may be reviewed or relied upon by an expert in formulating an opinion shall be provided to counsel for defendant at the same time that the expert report is served.