FAIR AUTOMOTIVE REPAIR, INC., *et al.*, Plaintiffs-Appellants, v. CAR-X SERVICE SYSTEMS, INC., *et al.*, Defendants-Appellees.

Second District No. 2—84—0222

Opinion filed October 26, 1984.—Rehearing denied December 18, 1984.

Robert V. Gildo, Ltd., of Wheaton, for appellants.

Mayer, Brown & Platt, Michael J. O'Rourke, of Winston & Strawn, and William A. Montgomery, Frederick J. Sperling, and Lori E. Simon, all of Schiff, Hardin & Waite, all of Chicago, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

This is an action between muffler repair chains for interference with business by means of slanderous statements. Plaintiffs filed a motion for a preliminary injunction on the basis of disparaging remarks made by defendants' agents after the case had been filed. Before the hearing on the motion, the motion was dismissed as to indi-

vidual defendant John Davis. During plaintiffs' presentation at the hearing on the motion, the trial court struck the motion. Plaintiffs appeal both interlocutory orders.

Plaintiffs in this action, Fair Automotive Repair, Inc. (Fair Auto) and Gayle S. Wakefield, are a corporation which operates and franchises muffler shops and that corporation's majority shareholder and chief executive officer. Defendants, Car-X Service Systems, Inc. (Car-X), and John G. Davis, are a corporation which is also in the muffler shop business and one of its employees. Plaintiffs filed a complaint against defendants on February 15, 1983, alleging tortious interference with their business by means of false statements disparaging of plaintiffs made to various persons. Plaintiffs sought both damages and injunctive relief.

Soon after this action was initiated, plaintiffs moved for a temporary restraining order. That motion was denied on March 1, 1983. On November 15, 1983, plaintiffs filed a motion for a preliminary injunction on the basis of allegations that false statements disparaging to plaintiffs by Car-X employees and agents had continued after March 1 to plaintiffs' detriment. On November 22, 1983, the trial court dismissed the motion as to defendant Davis only because there were no allegations of misconduct by Davis personally.

Also on November 22, the trial court denied Car-X's motion to strike plaintiffs' motion. Car-X had argued, in part, that misconduct by plaintiffs warranted application of the "clean hands" doctrine. The misconduct asserted was that of investigators hired by plaintiffs who went to Car-X shops, posed as customers, and made reference to a better estimate for services at a Fair Auto shop. In several instances, the Car-X shop employees responded with disparaging remarks about Fair Auto. The remarks observed by Fair Auto's investigators were those alleged in plaintiffs' motion.

The hearing on plaintiffs' motion began on December 7, 1983. Among the witnesses presented by plaintiffs were four investigators who told of hearing disparaging remarks made by employees of several area Car-X shops against Fair Auto and Gayle Wakefield. The investigatory visits were made after one of the investigators had heard disparaging remarks at a Car-X shop while there as a customer and not as part of any investigation.

On January 12, 1984, during the course of the hearing and prior to the completion of plaintiffs' case, counsel for Car-X represented to the court that two women had appeared at the Car-X shop that morning who were suspected of being more Fair Auto investigators. Counsel characterized this conduct as an "outrageous incident" and "har-

assment" and requested that plaintiffs agree to cease further visits. Counsel for plaintiffs admitted that two Fair Auto employees had gone to the Aurora shop, but represented there to be good cause and refused to agree to cease the visits unless Car-X agreed to cease making disparaging remarks. The trial court responded by inviting Car-X to reargue its motion to strike plaintiffs' motion. After that argument and response by plaintiffs' counsel, the court granted the motion to strike. Plaintiffs later sought a clarification order which the trial court entered on February 22, 1984. That order stated that plaintiffs' motion was struck because of plaintiffs' "improper conduct," including both the visits by the hired investigators before the motion was filed and the Aurora visit by the Fair Auto employees during the hearing on the motion. The February 22 order did not specify a legal theory for the court's action.

On March 13, 1984, plaintiffs filed a notice of interlocutory appeal from the orders striking their motion for a preliminary injunction and from the order dismissing that motion as to John Davis.

### STRIKING OF THE MOTION

#### A. SUFFICIENCY OF PLAINTIFF'S EVIDENCE.

■ The trial court's order striking plaintiff's motion for a preliminary injunction came before plaintiffs completed their case-in-chief. A trial court may not enter judgment for a defendant on the basis of the insufficiency of the plaintiff's evidence until the close of the plaintiff's case. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110; *Scheurer v. Christopher* (1967), 82 Ill. App. 2d 304 (abstract); *Strzelecki v. The Fair* (1939), 299 Ill. App. 113, 19 N.E.2d 624.) The trial court explicitly stated that its order was based upon plaintiffs' "improper conduct," not the inadequacy of plaintiffs' evidence. The rule stated here makes it clear that the inadequacy of plaintiffs' evidence cannot serve as an alternative basis to sustain the trial court's order.

#### B. UNCLEAN HANDS.

Defendants' appellate arguments for sustaining the trial court's decision relate to the supposed impropriety of plaintiffs' conduct in sending investigators to several Car-X shops to determine whether remarks disparaging to Fair Auto were being made to customers. The argument based on plaintiffs' conduct which was emphasized in the trial court was that the conduct warranted application of the "clean hands" doctrine.

■ ■ This doctrine holds that he who comes into equity must

come with clean hands or, as otherwise stated, one seeking equitable relief cannot take advantage of his own wrong. (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069; *Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498.) Equitable relief may be denied if the applicant is guilty of misconduct, fraud or bad faith toward the party against whom relief is sought, provided that it is in connection with the transaction under consideration. (*Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498.) This doctrine, however, is not a judicial straightjacket, and its application is a matter for sound judicial discretion. *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069.

No authority was suggested nor can be found suggesting whether the type of investigatory conduct engaged in by plaintiffs here is improper and can serve as the basis of a clean hands defense. Plaintiffs put forth several arguments urging the propriety of their investigatory visits which, although unsupported by authority, are persuasive. Plaintiffs point out the following: (1) they had good reason to conduct their investigation because they had inadvertently learned of disparaging remarks made after the trial court had denied plaintiffs' motion for a temporary restraining order; (2) there was no other reasonable alternative method available to plaintiffs to discover and prove whether disparaging remarks continued to be made because of the difficulty in using discovery methods to question past Car-X customers; (3) further harm could result to plaintiffs' business if the disparaging remarks continued; (4) plaintiffs' investigation employed procedures that were designed to avoid interference with Car-X's business, such as the use of professional investigators, to observe conduct about Car-X which could have been witnessed by other customers, and the actual employment of Car-X to perform the work sought by the investigators; (5) the public was not harmed, but could only benefit by the pursued enforcement of laws fostering competition.

Defendants argue that the investigatory conduct was improper because it was misleading and tended to manufacture evidence. This argument lends itself to a comparison to the doctrine of entrapment in criminal law. That doctrine has been codified in section 7—12 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 7—12), which provides that a person is not guilty of a criminal offense if his conduct was incited or induced by the police for the purpose of obtaining evidence against him. However, the entrapment defense is not available to a person who has the intent and design to commit an offense and who does commit the essential acts constituting it, merely because a

law officer, for the purpose of securing evidence, affords such person the opportunity to commit the criminal act, or purposely aids and encourages him in its perpetration. Ill. Rev. Stat. 1983, ch. 38, par. 7—12; *People v. Tipton* (1980), 78 Ill. 2d 477.

While this rule does not apply to civil cases, its logic is compelling in the comparable situation found in this case. Here, the investigators merely created an opportunity for the Car-X employees to make disparaging remarks. If the investigators were police officers and if making the disparaging remarks were a crime, the Car-X employees could not successfully claim an entrapment defense. While the investigators' purpose may have been to secure evidence, they did not manufacture evidence. While their method may have been misleading in that they were not ordinary customers sincerely interested in obtaining Car-X's services, the use of artifice and deception to obtain evidence should not be viewed as improper where, as here, safeguards have been taken to ensure that there would be minimal interference with the other party's business. (See *People v. Gray* (1963), 27 Ill. 2d 527, holding that artifice and deception is permissible in order to obtain evidence in a criminal case.) The Car-X shops were open for business and the investigators did no more than ordinary customers might and may have done. Thus, the investigators' technique in general should not be deemed improper.

The trial court seemed to disapprove most strongly of the visit that occurred during the hearing on the subject motion by Fair Auto employees to the Car-X shop in Aurora. Because no evidence of this episode was presented and its occurrence was merely reported by counsel for Car-X, plaintiffs argue that the trial court could not permissibly rely on it for its decision. However, the trial court's clarifying order of January 12, 1984, makes clear that the court was relying on the representations of defense counsel only to the extent of those facts admitted by counsel for plaintiffs. Statements of fact by a party's attorney at a judicial hearing may be used as an admission of fact by the party. (*Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260.) Plaintiffs' counsel admitted that during the hearing Gayle Wakefield authorized two employees from his office to go to the Aurora Car-X shop and attempt to determine whether disparaging conduct was continuing there and that no disparaging comments were made. Plaintiffs' counsel represented that that visit was authorized as a result of an anonymous report made to Fair Auto of disparaging remarks by employees at the Aurora shop.

The Aurora incident was little different from the other investigatory visits. Plaintiffs' counsel admitted to no conduct harmful to

defendants. The trial court had previously been asked to strike the plaintiffs' motion on the basis of the investigatory visits and had not taken that opportunity to condemn the practice or warn the plaintiffs to discontinue it. Thus, plaintiffs could not be faulted for believing their investigatory procedure to be permissible.

In short, under the general standards of the "clean hands" doctrine, plaintiffs' conduct was not improper and did not warrant the trial court's action in striking the motion for a preliminary injunction.

### C. DISCOVERY AND ETHICS RULES.

Defendants also contend that the trial court's decision can be justified as a sanction for plaintiffs' violation of the rules of discovery and professional responsibility. Because defendants did not present this contention to the trial court, plaintiffs argue waiver. However, the judgment may be sustained on any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382.

Defendants cite Supreme Court Rules 206(a) and 7—104(a)(1). The former requires notice be given to the other parties before a discovery deposition may be taken. (87 Ill. 2d R. 206(a).) The latter provides that a lawyer during the course of his representation of a client shall not "communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so." 87 Ill. 2d R. 7—104(a)(1).

With regard to discovery, the relevant Supreme Court Rules control the pretrial search for matters relevant to the pending litigation once a lawsuit has been filed. (*Bruske v. Arnold* (1969), 44 Ill. 2d 132.) These rules do not bar all *ex parte* investigations after a complaint has been filed. (See 87 Ill. 2d Rules 201 through 219.) Defendants attempt to characterize the conduct at issue here as the pursual of depositions without proper notice. However, plaintiffs' investigators did not seek statements from the employees at the Car-X shops for their information or impeachment value. Rather, when the investigators heard the statement, it was a form of observing conduct. The term "discovery" has been said to refer generally "to disclosure by defendant of facts, deeds, documents or other things which are in his exclusive knowledge or possession and which are necessary to party seeking discovery as a part of a cause of action pending, or to be brought in another court, or as evidence of his rights or title in such

proceeding." (Black's Law Dictionary 419 (5th ed. 1979).) The statements of the employees at the Car-X shops did not constitute fact within the exclusive knowledge of defendants but rather constituted the conduct at issue in the lawsuit. Defendants have failed to show in what way discovery rules were violated by plaintiffs' investigators' conduct.

With regard to the rule of professional responsibility against attorney contact with the opposing party, defendants' argument depends upon acceptance of the concept that the employees at the Car-X shops were "parties" to the lawsuit. Defendant John Davis was not contacted during investigatory visits, but it is questionable whether defendant Car-X, a corporation, was contacted. Plaintiffs put forth the "control group" test as enunciated in *Consolidated Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103. That case held that, with regard to a corporation, the attorney-client privilege is applicable only to those employees within the corporation's "control group," which is defined as those top management persons who had the responsibility of making final decisions and those employees whose advisory roles to top management are such that a decision would not normally be made without those persons' advice or opinion or whose opinions in fact form the basis of any final decision. Clearly, if the "control group" were applied here to corporate parties under Rule 7—104, that rule was not violated by the investigators' contacts with the employees at the Car-X shops.

■ Our supreme court in *Consolidated Coal* adopted the "control group" test in the area of attorney-client privilege after balancing the policy of encouraging full and frank consultations between a client and a legal advisor and the policy of maximizing the amount of relevant factual material which is subject to discovery. (89 Ill. 2d 103, 117-19.) That same logic should apply to the concept of "party" for Rule 7—104. If a narrower test were used, the goals of Rule 7—104 could be nullified for corporate parties. If a broader test were used, too much relevant information would be barred from the fact-finding process. We conclude that the "control group" test should be adopted with regard to corporate parties for the purpose of Rule 7—104.

■ Applying the "control group" test, then, plaintiffs did not violate Rule 7—104 because the persons contacted by their investigators, the employees at the Car-X shops, were not shown to have sufficient decision-making or advisory responsibilities within the corporate defendant.

The cases relied upon by defendants for this issue are distinguishable. In *Bruske v. Arnold* (1969), 44 Ill. 2d 132, an investigator re-

tained by the plaintiff's counsel obtained a statement from the defendant without notice to the defendant's attorney. While both Rule 206(a) and the predecessor to Rule 7—104 were violated by the conduct in *Bruske,* the statements obtained here were not "discovered" but observed conduct and the statements were not obtained from a "party." A similar contrast can be made between the present case and *Trans-Cold Express, Inc. v. Arrow Motor Transit, Inc.* (75th Cir. 1971), 440 F.2d 1216, where an investigator employed by the plaintiffs interviewed the defendant and his father without proper notice. In *Poor v. DiMucci Home Builders, Inc.* (1982), 103 Ill. App. 3d 543, 431 N.E.2d 1338, the defendant entered the plaintiffs' lots and made soil borings without application to the court or notice to the plaintiffs. In addition to the same grounds discussed for *Bruske* and *Trans-Cold, Poor* is distinguishable from the present case because the Car-X shops were open for business to customers such as plaintiffs' investigators, while the lots in *Poor* were private residences.

■ Even if the investigators' conduct here were considered violative of the rules discussed, the trial court's sanction, striking the motion, was unduly extreme. While Supreme Court Rule 219(c) (87 Ill. 2d R. 219(c)) does permit the striking of a pleading as a permissible sanction for a violation of discovery rules, the sanction approved in *Bruske v. Arnold* (1969), 44 Ill. 2d 132, *Poor v. DiMucci Home Builders, Inc.* (1982), 103 Ill. App. 3d 543, 431 N.E.2d 1338, and *Trans-Cold Express, Inc. v. Arrow Motor Transit, Inc.* (7th Cir. 1971), 440 F.2d 1216, was exclusion of the evidence improperly obtained. The trial court's action here was not tantamount to such an exclusion because plaintiffs had not yet completed their case-in-chief and because there was some evidence of disparaging statements obtained inadvertently (*i.e.,* Peter Dakuras' visit to the Car-X shop in Hanover Park on October 17, 1983).

### D. INTEGRITY OF PROCEEDINGS.

Defendants contend that the trial court's decision may be sustained as a proper exercise of its inherent power to control the integrity of the proceedings. That integrity was threatened, defendants argue, when plaintiffs sent two employees to the Aurora shop during the course of the hearing and plaintiffs' counsel refused to agree to cease such conduct.

■■ A trial court possesses the inherent power to dismiss a cause for failure of a party to take some step as ordered where no sufficient excuse is provided. (*Bejda v. SGL Industries, Inc.* (1979), 73 Ill. App. 3d 484, 392 N.E.2d 38, *aff'd in part, rev'd in part on other*

*grounds* (1980), 82 Ill. 2d 322.) However, dismissal for noncompliance with orders of the court is a drastic sanction and is proper only as a last resort where a party has shown a deliberate, contumacious and unwarranted disregard for the court's authority. (*Bejda v. SGL Industries, Inc.* (1979), 73 Ill. App. 3d 484, 392 N.E.2d 38.) Here, the trial court had issued no orders prohibiting plaintiffs from further visits to Car-X shops, and those visits did not violate any Supreme Court Rules. Plaintiffs' refusal to agree to cease the visits was conditioned upon defendant's refusal to agree to stop the disparaging comments. The trial court at the hearing where the Aurora visit was disclosed still did not request that plaintiffs stop the conduct that it found improper. In light of these circumstances, the trial court's action could not be justified under its inherent power to control the integrity of the proceedings.

DISMISSAL OF DAVIS

A. JURISDICTION

The motion for a preliminary injunction was orally dismissed as against John Davis only on November 22, 1983, and plaintiffs' notice of appeal challenges that order as well as the later order striking the motion. Davis earlier moved, on the basis of the lack of jurisdiction, that this court dismiss that part of the appeal challenging the November 22 order, but this court denied his motion. Davis now renews his jurisdictional argument. While plaintiffs suggest that this court's earlier ruling must stand because no new arguments are raised, it is this court's duty to reconsider the question of its jurisdiction if an earlier ruling seems to be erroneous. *Allabastro v. Wheaton National Bank* (1980), 91 Ill. App. 3d 222, 414 N.E.2d 537.

Plaintiffs' appeal is from two orders which, in effect, denied preliminary injunctive relief. Orders relating to preliminary injunctions are interlocutory orders rather than final ones. (See *Smith v. Goldstick* (1982), 110 Ill. App. 3d 431, 442 N.E.2d 551.) Supreme Court Rule 307(a)(1) makes interlocutory orders which grant, modify, refuse, dissolve, or refuse to dissolve or modify an injunction appealable as a matter of right if notice of appeal is filed within 30 days. (87 Ill. 2d R. 307(a)(1).) Since the order of November 22, 1983, was not appealed until March 13, 1984, the appeal relating to that order was untimely.

Plaintiffs have pointed out that Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) makes appealable orders that are final as to fewer than all parties only if a finding had been made that there is no

just cause for delaying enforcement or appeal and that no such finding was made here. Thus, as plaintiffs would have it, they could not appeal the November 22 order until after the "final interlocutory" order striking the motion as to the remaining defendant has been rendered. However, to be appealable under Rule 304(a), an order must be final in character as well as contain the requisite finding. (*Smith v. Golstick* (1982), 110 Ill. App. 3d 431, 442 N.E.2d 551.) Since the November 22 order was interlocutory, Rule 307 and not Rule 304 applies.

 Nor can this court consider the propriety of the November 22 order within the scope of plaintiffs' timely appeal of the orders of January 12 and February 22, 1984. An order from which an appeal might have been taken may not be reviewed on appeal from a subsequent order entered in the same cause. (*Johnson v. Coleman* (1977), 47 Ill. App. 3d 671, 365 N.E.2d 102.) Thus, this court may not consider the dismissal of plaintiffs' motion for a preliminary injunction as against defendant John Davis.

The appeal from the order of the circuit court of Du Page County dismissing individual defendant Davis from plaintiffs' motion for a preliminary injunction is dismissed as untimely. The order striking the motion for a preliminary injunction is reversed and remanded for a hearing on the motion, because the conduct by plaintiffs upon which the trial court based its decision was not improper.

Reversed in part, dismissed in part and remanded.

SCHNAKE and UNVERZAGT, JJ., concur.