249 N.J. Super. 137 (1991)
592 A.2d 33
ROBYN C. ERICKSON, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF MARK W. ERICKSON, AN INCOMPETENT, AND PAUL R. ERICKSON, PLAINTIFFS,
v.
WINTHROP LABORATORIES, A NEW YORK CORPORATION, STERLING DRUG, INC., A DELAWARE CORPORATION AND THE GIVAUDAN CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided April 10, 1991.
*138 Myron W. Kronisch (Kronisch, Schkeeper & Lesser) for Plaintiff.
Eugene M. Purcell (Purcell, Ries, Shannon & Mulcahy) for Defendant Winthrop Laboratories.
George M. Newcombe (Simpson, Thacher & Bartlett) for Defendant Sterling Drug, Inc.
*139 Frank V.D. Lloyd (Harwood Lloyd) Karl E. Seib, Jr. (Patterson, Belknap, Webb & Tyler) for Defendant The Givaudan Corporation.
SCIUTO, J.S.C.
Plaintiffs have brought an action in strict liability and negligence against defendants Givaudan Corporation (Givaudan) and Winthrop Laboratories, a division of Sterling Drug (Sterling). The plaintiffs, Robyn and Paul Erickson, individually and as Guardians Ad Litem for Mark Erickson, (plaintiffs), contend that after his birth in 1963, Mark suffered injuries to his central nervous system after being bathed in Phisohex.
During the discovery stage of this litigation, plaintiffs made informal ex parte contact with former employees of the defendant corporations. Defendants objected to such contacts arguing such contact by plaintiffs' attorney violated the Rules of Professional Conduct adopted by the New Jersey Supreme Court. Oral arguments were heard on this issue and a number of other matters on March 26th and 28th, 1991.
This opinion will only deal with the issue of informal ex parte contact of former employees of the defendants and will offer guidance to the parties in this litigation as to future contacts. At the time of the hearing, this court knew of only two contacts. Dr. Wessinger had already been deposed and is no longer relevant to this hearing. Dr. Coulston, a former Director of Experimental Pathology and Toxicology at Sterling Winthrop Research Institute from approximately 1952 to 1963, was also contacted ex parte by plaintiffs' counsel.
There are two recently published conflicting decisions in the New Jersey federal courts concerning this issue. In the New Jersey state courts this issue is one of first impression.
At the heart of the matter is 4.2 of the Rules of Professional Conduct (RPC) adopted by the New Jersey Supreme Court. The court did not formally adopt the American Bar Association (ABA) Comments to the RPC but instructed us to use them as *140 an interpretive aid. Introduction to the Rules of Professional Conduct. Rule 4.2 states:
In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer, or is authorized by law to do so.
The A.B.A. Comment to RPC 4.2 states in pertinent part:
In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a (1) managerial responsibility on behalf of the organization and (2) with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability (3) or whose statement may constitute an admission on the part of the organization....
In PSE & G v. Aegis, 745 F. Supp. 1037, 1042 (DNJ 1990), Judge Politan drew a bright-line barring such contacts:
... both the present and former employee should be considered a party represented by the corporate attorney. As such each individual cannot be the subject of informal ex parte investigative fact finding.
In PSE & G, the defendant insurance carrier used a private investigator to locate and interview former PSE & G employees. At 1038. Defendant wanted to know about the activities of former employees on contamination sites. Plaintiff alleged that defendants were responsible for indemnification of third-party property damage claims.
Judge Politan put forward a number of policy reasons for his bright-line test. He wanted to encourage judicial economy by discouraging an increased motion practice and "needless litigation concerning potential witnesses' theoretical testimony." At 1042. The court also characterized as "unworkable" the idea that a corporation "make a showing concerning an individual's projected testimony prior to prohibiting ex parte contact with the individual." The court also found "unworkable" the idea that an investigator or attorney would "cease questioning the moment the very information sought is revealed." In the end, Judge Politan found it more "logical to hold that such individuals are off limits except for formal discovery because they may make statements which can be imputed" to the corporate defendant.
*141 On the other side of the spectrum, a federal court magistrate, Judge Simandle, found that RPC 4.2 does not create an absolute bar to ex parte contact with former employees. Curley v. Cumberland Farms, Inc., 134 F.R.D. 77 (D.N.J.); aff'd. 134 F.R.D. 77 (D.N.J.); (hereinafter Curley). Curley involved an action by plaintiff alleging that defendant engaged in "an unlawful pattern and practice of extorting false confessions from them as part of a scheme to cover store losses in violation of federal and state RICO laws." Curley, 134 F.R.D. at 83. Plaintiff's attorney in Curley sought the names and addresses of 80 former Loss Prevention Specialists (LPS's). At 83. The plaintiffs in Curley argued that the large number of witnesses demanded a speedy and efficient process. At 84. Defendants claimed that the 80 LPS's were "parties ... known to be represented by counsel" and therefore protected by RPC 4.2.
In not following the "bright line test", Judge Simandle stated:
[n]either the fact that ex-employees may have important knowledge nor the obvious fact that the corporate defendant may prefer not to have plaintiff's counsel contact its ex-employees is sufficient to preclude contact. [Curley at 87].
Judge Simandle began his examination by determining whether the individuals contacted were parties. Curley used the test enunciated in the ABA Comment stated above. The court in Curley found that the former LPS's were not managers, but low-level employees. Curley, 134 F.R.D. at 88. The court also found that contacts with the former LPS's could not be imputed to the defendant corporation because plaintiff's theory of liability arose out of RICO and not respondeat superior. At 88.
The Curley court reasoned that "imputation of liability" must be looked at on a case by case basis. The conduct of the ex-employees must be looked at. At 88. The language of the ABA Comment is instructive since it looks to "whether the act or omission `may' be imputed." This is where Curley disagrees with PSE & G's holding that "a former employee's acts or omissions could be imputed under any factual scenario to the *142 organization." PSE & G, 745 F. Supp. at 1040. If the framers of 4.2 wished to constrain all contacts, the rule would have been drafted accordingly. Curley, 134 F.R.D. at 89.
As for the third prong of the Curley test, the court found that the defendant could not be liable for admissions by the former employees. At 92. Such statements by ex-employees would constitute hearsay.
This court adopts the Curley test even though the case at bar is distinguishable. Unlike Curley, the case before this court is one based on respondeat superior. In contrast, Curley was based on a RICO top-to-bottom theory of liability. Curley, 134 F.R.D. at 88.
The court in Curley also knew exactly who would be contacted. Id. at 84. In the present case, this court is aware of plaintiffs' contacts with two former employees. Dr. Wessinger, who conducted research for Sterling, has been deposed and therefore the issue as to him is moot. Dr. Coulston, who at one time was a Director of Research at Sterling, was contacted informally.
This court finds that Dr. Coulston was a party and represented by corporate counsel. He clearly fits into the Curley test. Dr. Coulston was a former manager for Sterling. Furthermore, since this case is based on respondeat superior, an admission by Dr. Coulston could be imputed to the defendants.
Since this court has not been told who else the plaintiffs have contacted, this opinion will also serve as a guide for future contacts. These protective measures will serve to prevent any prejudice to the defendants while allowing the plaintiff to conduct discovery in an efficient manner. See Curley, 134 F.R.D. at 91.
This court orders the plaintiffs to make available to defendants a list of all persons they attempted to contact. Plaintiffs shall also keep a list of names for all future contacts. *143 Plaintiffs must turn over any notes, statements and transcriptions of any kind taken during any past and future contacts. Any statements taken must be memorialized in their entirety and shall contain identifying data and the date obtained. Plaintiffs' counsel shall determine whether the person contacted was a manager, director or high-level employee and, if so, shall terminate the contact before discussing the subject matter of this case and shall release the name and address of said person to defendants. This court is mindful of plaintiffs' work-product privilege and does not wish the plaintiff to turn over any material which would fall under that umbrella. However, simple factual information and statements do not constitute work-product. R. 4:10-2.
The law of this state does not give one party a proprietary right to a witness. Lazorick v. Brown, 195 N.J. Super. 444, 480 A.2d 223 (App.Div. 1984). This opinion does not establish such a right nor does it hide any witnesses from any party. Nothing in the above paragraph precludes any party from taking depositions. Furthermore, this opinion does not ban proper informal discovery contained within these guidelines.
In conclusion, this court finds that one is a party and represented by corporate counsel if: he/she had a managerial, directorial or high-level position in a corporation; or if any act or omission by any person could be imputed to a defendant for civil or criminal liability; or whose statement may constitute an admission on the part of the defendant corporation. Counsel must use this guide for future contacts. RPC 4.2 should not be a bar to contact in all cases. The rule was simply not drafted in such a manner. Counsel must adhere to the Rules of Professional Conduct and their interpretation by the courts of this state.