633 A.2d 959

IN THE MATTER OF OPINION 668 OF THE ADVISORY
COMMITTEE ON PROFESSIONAL ETHICS.

Argued September 27, 1993—Decided December 14, 1993.

*Mark Paul Cronin,* Deputy Attorney General, argued the cause for appellant Attorney General of New Jersey (*Fred DeVesa,* Acting Attorney General, attorney; *Mr. Cronin* and *Joseph L.*

*Yannotti* and *Jack M. Sabatino,* Assistant Attorneys General, of counsel and on the briefs).

*Bennet D. Zurofsky* argued the cause for appellants, New Jersey Employee Lawyers Association, Peter Van Schaick, Esquire, and Max Manshel, Esquire (*Reitman Parsonnet,* attorneys).

*Theodore W. Geiser* argued the cause for respondent Advisory Committee on Professional Ethics (*Connell, Foley & Geiser,* attorneys).

*Theodore V. Wells, Jr.,* argued the cause for *amicus curiae* Association of Criminal Defense Lawyers of New Jersey (*Mr. Wells,* attorney; *Rosemary E. Ramsay,* on the brief).

*Stephen D. Cuyler* submitted a brief on behalf of *amicus curiae* Cuyler, Burk & Matthews (*Cuyler, Burk & Matthews,* attorneys; *Mr. Cuyler, Richard A. Crooker,* and *Maria C. Hermida,* on the brief).

PER CURIAM.

In *Opinion 668,* 132 *N.J.L.J.* 573 (1992), the Advisory Committee on Professional Ethics (ACPE) addressed whether the rationale of *State v. CIBA–GEIGY Corp.,* 247 *N.J.Super.* 314, 589 *A.*2d 180 (App.Div.), *appeal granted,* 126 *N.J.* 338, 598 *A.*2d 895 (1991), *appeal dismissed,* 130 *N.J.* 585, 617 *A.*2d 1213 (1992), which dealt with ethical restraints on *ex parte* interviews of current employees of a corporate litigant, applied with equal force to the conduct of *ex parte* interviews of former employees of a corporate litigant. In its analysis of the issue, the ACPE did not undertake its own review of the ethical principles stated in *CIBA–GEIGY.* The ACPE concluded that the rationale of *CIBA–GEIGY* applied with equal force to the conduct of *ex parte* interviews of former employees of a corporate litigant. We agreed to review the ACPE Opinion under *Rule* 1:19–8. 133 *N.J.* 414, 627 *A.*2d 1126. Because we have reservations about the scope of the *CIBA–GEIGY* decision, we have decided to reserve decision on the underlying ethical issues until we receive the report of a committee that will assess the concrete effects of a rule that we might adopt rather

than decide issues in the abstract. Today we set forth interim rules of conduct that will provide guidance to the bench and bar pending our final resolution of the issues. The committee should not consider those rules as binding on it; its recommendations should be independent of them except for such weight as the committee concludes their merits deserve.

I

This review primarily concerns the application of *Rule of Professional Conduct (RPC)* 4.2 to corporations. That ethics rule restrains a lawyer for one party from speaking directly to another party who is represented by counsel. *RPC* 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

That rule is easily understood and readily applicable in the familiar context of a suit between two represented individuals, such as buyer and seller of real estate or husband and wife in a divorce matter. An attorney for the buyer simply may not communicate with the seller without the consent of the seller's attorney. But when the other party to a suit is a corporation, application of the rule becomes murky. Because a corporation cannot speak except through natural persons, the question is which persons associated with the corporation might be considered parties for the purposes of the rule.

The American Bar Association's (ABA) current commentary to *RPC* 4.2 would seemingly give the restraint on direct communication a broad sweep. The commentary states:

> In the case of an organization, [*RPC* 4.2] prohibits communications by a lawyer for one party concerning the matter in representation with [ (a) ] persons having a managerial responsibility on behalf of the organization, and with [ (b) ] any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or [ (c) ] whose statement may constitute an admission on the part of the organization.

[*Lawyers' Manual on Professional Conduct*
(ABA/BNA) 01:158 to 01:159 (1990).]

However, earlier commentary to *RPC* 4.2 did not suggest so broad an interpretation. The 1981 ABA proposal stated:

This Rule prohibits communication concerning the matter in representation by a lawyer for one party with [the] managing agents of a party that is a corporation or organization, for such persons speak for the organization. It does not prohibit communication with lower echelon employees who are not representatives of the organization. Whether a specific employee is a representative of a client can depend on the circumstances, particularly whether the employee has significant managerial responsibility in the matter in question.

[*Model Rules of Professional Conduct RPC*
4.2 cmt. (Proposed Final Draft 1981).]

The 1983 Debevoise Committee Report, which recommended to the Court that it adopt *RPC* 4.2, based its recommendation on the 1981 version of the ABA commentary. *See Report of the New Jersey Supreme Court Committee on the Model Rules of Professional Conduct,* 112 *N.J.L.J.* July 28, 1983, Supp. 1–2. In September 1984, the Supreme Court adopted generally the ABA's Model Rules of Professional Conduct. The Court has not, however, adopted the ABA's later commentaries to *RPC* 4.2 that followed the submission of the Debevoise Committee Report. *See* Pressler, *Current N.J. Court Rules,* note on *R.* 1:14 (1993).

Absent a literal text or conclusive commentary, courts and commentators elsewhere have adopted or recommended a variety of approaches for determining which persons may be considered "parties" for purposes of *RPC* 4.2. Some of the more familiar are the "control group test," the "managing speaking agent test," or the "alter ego test." *See* Felicia Ruth Reid, Comment, *Ethical Limitations on Investigating Employment Discrimination Claims: The Prohibition on Ex Parte Contact with a Defendant's Employees,* 24 *U.C.Davis L.Rev.* 1243, 1285–95 (1991). The control group is defined as

those top management persons who [have] the responsibility of making final decisions and those employees whose advisory roles to top management are such

that a decision would not normally be made without those persons' advice or opinion or whose opinions in fact form the basis of any final decision.

> [*Fair Automotive Repair, Inc. v. Car–X Serv. Sys., Inc.*, 128 *Ill.App.*3d 763, 84 *Ill.Dec.* 25, 31, 471 *N.E.*2d 554, 560 (Ill.App.Ct.1984).]

The Illinois court concluded that a broader test would bar too much relevant information from the fact-finding process. *Id.*, 84 *Ill.Dec.* at 32, 471 *N.E.*2d at 561.

The Washington Supreme Court adopted the second approach, the "managing speaking agent test," in *Wright by Wright v. Group Health Hospital*, 103 *Wash.*2d 192, 691 *P.*2d 564 (1984). That test precludes access to only those employees with the power to bind the organization, and was said by that court to represent the ABA's approach as evidenced by the 1983 commentary to the ABA rule. *Id.* 691 *P.*2d at 568–69. The purpose of that approach is to shield corporate employees with sufficient authority to bind the corporation from improper advances by adversary counsel. *Id.* at 569.

In the *CIBA–GEIGY* case, the Appellate Division ruled that the interpretation that best addressed the concerns sought to be advanced by the *RPC* was the "alter ego" test adopted by the New York Court of Appeals in *Niesig v. Team I*, 76 *N.Y.*2d 363, 559 *N.Y.S.*2d 493, 558 *N.E.*2d 1030 (1990). Relying on *Niesig*, the Appellate Division held that after the commencement of an adversarial proceeding against a corporation, opposing counsel could not directly interview any corporate employees " 'whose acts or omissions in the matter under inquiry are binding on the corporation * * * or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel.' " 247 *N.J.Super.* at 325, 598 *A.*2d 895 (quoting *Niesig, supra,* 559 *N.Y.S.*2d at 498, 558 *N.E.*2d at 1035). We granted the State leave to appeal from the Appellate Division's ruling in *CIBA–GEIGY,* 126 *N.J.* 338, 589 *A.*2d 180, but later dismissed the appeal as moot when the underlying criminal case was concluded by a plea. 130 *N.J.* 585, 617 *A.*2d 1213.

## II

In the course of the argument of this review and the argument of the *CIBA–GEIGY* appeal, the Court perceived that many questions were left unanswered by each of the formulations. For example, in the *CIBA–GEIGY* case, corporate counsel did not contend before us that RPC 4.2 insulated from the investigatory processes of government those employees whom he described as "fact witnesses" but rather insulated from pretrial interviews only those employees whose acts or omissions may be imputed to the corporation or whose statements might constitute an admission on behalf of the company. Although that interpretation may at first glance appear to be a narrowing construction, it might well have the effect under New Jersey law of precluding access to virtually every employee of an organization and may not have been the interpretation intended by the *CIBA–GEIGY* court.

■  Under New Jersey's very broad concepts of admissibility of evidence, a statement by a party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship is admissible in evidence against the party. *Evid.R.* 803(b)(4). Hence, under either of the above prongs, *i.e.*, whether imputed to the corporation or constituting an admission, most statements by a corporate employee might fall within the prohibited group. (Former employees are not, strictly speaking, covered by the Evidence Rule.) How, too, can an attorney conduct an interview when the right to conduct the interview depends on facts and circumstances not apparent until after the interview has occurred? Because many subtle and complex problems of evidentiary law arise relating to corporate liability, both in the civil and criminal context, we deem it wise to defer final resolution of the issues until we have had the benefit of a committee process that can better advise us how to balance the competing interests involved. Were we to adopt a blanket rule prohibiting interviews with all employees whose statements might be admissible against a corporation, virtually no pre-filing investigations of claims against corporations could be conducted without

the consent of corporate counsel. Real problems have been posed concerning how an attorney preparing, for example, an employment-discrimination case would be able to satisfy himself or herself that the complaint was well-founded in fact and was not frivolous. On the other hand, we agree that a corporation should not be at a trial disadvantage by virtue of its corporate status. Hence, those employees trusted with conducting a suit or claim on behalf of a corporation should receive the same ethical respect from adversary counsel under *RPC* 4.2 as an individual would in managing his or her own claim. We also believe, although we are not yet certain of this point, that a category of employees may exist whose conduct is so directly linked to the corporation that adversary counsel should not have unrestricted *ex parte* access to such individuals.

On that score, we must consider the extent to which government lawyers may in criminal matters conduct interviews of the employees of the corporation without offending the corporation's Sixth Amendment right to counsel. Once perceived incapable of committing a crime, corporations have long since been subject to criminal process. *See New York Cent. & Hudson River R.R. Co. v. United States,* 212 *U.S.* 481, 29 *S.Ct.* 304, 53 *L.Ed.* 613 (1909) (imposing statutory penalty on corporation for wrongful act of agent). Although a corporation may not invoke a privilege against self-incrimination, attorneys for corporations may rely on the attorney-client privilege in certain circumstances to prevent disclosure of communications made to them. *Upjohn Co. v. United States,* 449 *U.S.* 383, 101 *S.Ct.* 677, 66 *L.Ed.*2d 584 (1981). Courts must determine how the unique nature of the corporation can fairly be related to other principles of law, such as fair trial or right to counsel.

We have not had occasion to address the question of the scope of the provisions of *N.J.S.A.* 2C:2-7 that impose liability on a corporation for the acts of its agents and afford a due-diligence defense in certain circumstances. We have an intuitive sense that when the organization's liability would be based on an individual's

conduct, *ex parte* contact with the individual should afford some measure of protection to the *alter ego* that will suffer the punishment. A corporation's Sixth Amendment right to counsel may be implicated if government prosecutors might, after indictment, unqualifiedly interview the individual whose conduct establishes the guilt of the corporation. The example that most frequently comes to mind is the "valve-turner," one who opens the valve at the petroleum company that discharges hazardous waste into a waterway. That conduct, in and of itself, may be the basis of the corporation's liability, criminal and civil. We believe, for the present, that in the post-indictment, post-filing stages of litigation, adversary counsel should not have the unqualified right to interview such an employee. A concern was expressed at oral argument that that rule prohibiting access to such an employee would unnecessarily hamper the trial preparations of government prosecutors even after indictment. "By obtaining the indictment, the State represents that it has sufficient evidence to establish a *prima facie* case." *State v. Sanchez,* 129 *N.J.* 261, 276, 609 *A.*2d 400 (1992). Hence, the State will know in almost every instance whom it may and may not freely interview.

■ We would temper the Rule, however, by interpreting the *RPC* to require, in that context, notice rather than consent. The Association of Criminal Defense Attorneys (Association) advanced that position. Recognizing that the relationship between corporate counsel and corporate employees is particularly sensitive in the criminal field, the Association has argued before us that the corporate attorney has only the right to be present at such interviews. A corporate attorney could not (because of a conflicting position as counsel for the corporation) act as counsel to such employees in a criminal matter. The party requesting the interview should seek to accommodate the reasonable concerns of other counsel, such as unavailability or other scheduling problems. Corporate counsel may not, however, stonewall the inquiry. Corporate counsel would be expected to have the right to clarify an inquiry for the witness but not to terminate the interview. At the

request of the employee, corporate counsel might, subject to ethical restraints, answer any questions the employee might have. Such an interview should not be a mini-deposition. In civil cases, allowing informal interviews of employees serves to decrease the number of costly formal depositions. Jerome N. Krulewitch, Comment, *Ex Parte Communications with Corporate Parties: The Scope of the Limitations on Attorney Communications with* *One of Adverse Interest,* 82 *Nw.U.L.Rev.* 1274, 1283–84 (1988).

We confirm, as did the ACPE, the ethical restrictions that are imposed on a lawyer conducting such an interview, particularly an *ex parte* interview. The attorney conducting the interview must inform the party being interviewed of the purpose of the interview; that it is in an adversary context; and that he or she may wish counsel. *See RPC* 4.3. Corporate counsel are equally aware of the ethical restrictions that are imposed on the representation of the multiple interests of the corporation and the employee. *RPC* 3.4(f)(1, 2). Evidence in such an interview might serve to exculpate the corporation and inculpate the individual. A corporation might need to provide separate counsel for such an employee.

To sum up, we shall for the present limit the application of *RPC* 4.2 in the organizational context to (a) the control group, which, for now, we interpret to mean those employees of the organization entrusted with the management of the case or matter in question, and (b) the employee or employees whose conduct, in and of itself, establishes the organization's liability. With respect to that latter class of employees, we interpret the *RPC* to require notice to, rather than consent from, the organization's attorney and to be in effect after filing of an indictment or civil complaint. Any deliberate delay in filing to circumvent the ethical restraints of the *RPC* will not be countenanced. For now, those ethical restraints apply to the interview of present and former employees in the two classes.

Finally, we will refer these issues, as well as the application of the *RPC,* pre-indictment and pre-litigation, to a special committee for the purpose of preparing a report that will more fully assess

the policy implications in these varied contexts. At heart, the rule requires a balance of fairness and practicality in the conduct of adversarial matters.

*For remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.