### In re The PRUDENTIAL INSURANCE COMPANY OF AMERICA SALES PRACTICES LITIGATION.

**This Document Relates to All Actions.**

**MDL No. 1061.**

United States District Court, D. New Jersey.

Dec. 19, 1995.

Allyn Lite, Goldstein, Till & Lite, Newark, NJ, Liaison Counsel, for Plaintiffs.

Reid L. Ashinoff, Michael Barr, Sonneschein, Nath & Rosenthal, New York City, Lead Counsel, for the Prudential Insurance Company.

J. Bruce Miller, Louisville, KY, Liaison Counsel, for Plaintiff "Agent Class".

## *OPINION*

WOLIN, District Judge.

Currently before the Court is the motion of defendant Prudential Insurance Company of America ("Prudential") for a protective order restricting plaintiffs' attorneys from ex parte contact with present and former Prudential employees. Pursuant to the instructions set forth below, Prudential's motion will be granted.

## BACKGROUND

This case involves allegations that Prudential engaged in various practices and schemes to defraud customers by misrepresenting the nature and potential cost of certain insurance products. After numerous plaintiffs—as individuals and as proposed classes—filed actions against Prudential across the country, the Judicial Panel on Multidistrict Litigation centralized them in this Court, on Prudential's motion, for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

The plaintiffs may be grouped broadly into two categories: customers who assert that Prudential defrauded them (the "customers"), and former sales agents who allege that Prudential wrongfully terminated their employment when they refused to cooperate in Prudential's allegedly fraudulent practices (the "agents"). Most of the customers have joined to move for certification of a national class. Certain customers have stated their intention to proceed independently and move to transfer or remand; the Court has already denied one such application. Prudential has moved to stay the agents' actions in favor of arbitration and to dismiss certain agents' claims on the ground that they are preempt-

ed by section 301 of the Labor Management Relations Act. Accordingly, the parameters of the litigation before this Court are not yet fully established.

The subject of this motion is the scope of plaintiffs' attorneys' ethical obligation to refrain from contacting Prudential's current and former employees ex parte.

## DISCUSSION

### 1. Which Ethics Rules Apply?

It is clear that, pursuant to General Rule 6A of the United States District Court for the District of New Jersey ("General Rule 6A"),[1] the parties must comply with New Jersey Rule of Professional Conduct ("RPC") 4.2, as interpreted by New Jersey Courts and the Third Circuit. The proposed national class action plaintiffs (the "proposed national class") and the agents contend that attorneys who litigate in this Court are governed *solely* by the Rules of Professional Conduct as interpreted by the New Jersey courts, and point out that the New Jersey Supreme Court has spoken definitively on the subject of RPC 4.2 in *Matter of Opinion 668 of the Advisory Committee on Professional Ethics,* 134 N.J. 294, 633 A.2d 959 (1993) ("*Opinion 668* ").

Prudential, on the other hand, contends that attorneys involved in this case are also subject to various other ethical rules. Prudential argues that the New York law firm of Milberg Weiss Bershad Hynes & Lerach ("Milberg Weiss"), lead counsel for the proposed national class, is subject to New York ethical rules, as are any individual attorneys to whom it delegates work; that all individual attorneys are also subject to the rules of the jurisdiction in which they principally practice; and that all attorneys are subject to the ethical rules that obtain in any location where they conduct an interview and in any jurisdiction where the case for which

---

1. General Rule 6A provides:
   The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

the interview is conducted may ultimately be tried.[2]

■ Both Prudential and the proposed national class have referred the Court to ABA Model Rule 8.5 ("ABA Rule 8.5"), the most recent amendments to which New Jersey has not yet adopted. New Jersey's version of Rule 8.5 ("New Jersey Rule 8.5") provides: "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction although engaged in practice elsewhere." The 1993 amendment to ABA Rule 8.5 adds a choice of law provision. In relevant part, it reads:

> In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows: (1) for conduct in connection with a proceeding in a court before which a lawyer has been admitted to practice (either generally or for purposes of that proceeding), the rules to be applied shall be the rules of the jurisdiction in which the court sits, unless the rules of the court provide otherwise....

Since it is not clear from the text of New Jersey Rule 8.5 which ethics rules a court is to apply when an attorney commits an ethical violation outside the jurisdiction, and the New Jersey Supreme Court has apparently not addressed the choice of law issue, General Rule 6A authorizes this Court to fashion its own rule.[3] This Court, guided by its prediction of what the New Jersey Supreme Court would decide in such a situation, has determined to apply the choice of law provision of ABA Rule 8.5 to this case.

Prudential "acknowledge[s] that Model Rule 8.5 does not support [its] position." (Letter to the Court from Alan E. Kraus, Esq. dated December 8, 1995) This Court finds it clear that ABA Rule 8.5, which the Court adopts for purposes of this multidistrict case, requires that the New Jersey ethics rules govern all attorneys who appear or participate in this matter. Although another jurisdiction may obviously exercise concurrent control over the members of its bar, this Court will enforce only New Jersey's ethics rules in this case.

### 2. New Jersey Law

#### A. RPC 4.2

Entitled "Communication with Person Represented by Counsel," RPC 4.2 provides: "In representing a client, a lawyer shall not communicate about the subject of the repre-

---

**2.** A third position on this question has been advanced by plaintiffs in a proposed class action formerly pending in West Virginia (the "Kittle plaintiffs"), who contend that this Court should disregard RPC 4.2 and adopt federal common law on the ground that RPC 4.2 conflicts with the broad discovery provisions of the Federal Rules of Civil Procedure. This position may be rejected out of hand. It is long settled that courts of this district apply the ABA Rules of Professional Conduct "as revised by the New Jersey Supreme Court." General Rule 6A; *Cordy v. Sherwin–Williams Co.*, 156 F.R.D. 575, 583 (D.N.J.1994); *Host Marriott Corp. v. Fast Food Operators, Inc.*, 891 F.Supp. 1002, 1006 (D.N.J. 1995). Although the Court may reach its own conclusion as to how to apply a particular rule where the New Jersey Supreme Court has not yet spoken, *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F.Supp. 967, 1995 WL 669107 (D.N.J. 1995), and General Rule 6A permits the Court to depart from the New Jersey Supreme Court's interpretation as "required or permitted by federal statute, regulation, court rule or decision of law," *Cordy*, 156 F.R.D. at 583, a situation would have to be very extraordinary to justify disregarding the rule entirely. The Kittle plaintiffs cite *Hanntz v. Shiley, Inc.*, 766 F.Supp. 258 (D.N.J.

1991), for the proposition that this district has refused to apply RPC 4.2 to former employees on the ground that it would conflict with Federal Rule of Civil Procedure 26. This argument is specious for two reasons. First, *Hanntz* did not even partially ground its refusal to apply Rule 4.2 to former employees on any conflict with federal discovery rules. *See Hanntz*, 766 F.Supp. at 265. Second, *Hanntz* has been supplanted by *Opinion 668*, which modified Rule 4.2 to restrict ex parte contacts with former employees explicitly.

**3.** It is clear to the Court that it must adopt and apply a conflict of laws rule; if Prudential were correct that a single attorney may be subject to the ethics rules of multiple jurisdictions, a single interview could be subject to the local rules—as construed by local courts—of at least five jurisdictions. For instance, an attorney from Milberg Weiss' California office could conduct an interview in Maryland related to a case which might ultimately be tried in Tennessee. For purposes of that interview alone, that attorney would be subject to the rules of New Jersey, New York, California, Georgia, Maryland and Tennessee. Such a result is highly impractical and virtually unenforceable in a litigation of national scope such as this one.

sentation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Obviously, the difficulty in applying this rule to a corporate party such as Prudential is that Prudential, the represented party, can speak only through its employees and representatives. It does not follow, however, that every time a Prudential employee speaks she speaks for Prudential, and there are many good reasons to allow and even encourage informal investigations into such employees' knowledge, both before litigation is filed and as a precursor or supplement to expensive, time-consuming formal discovery.

The Courts' task, then, has been to apply RPC 4.2 in such a way as to preclude ex parte contacts with persons who will speak for a corporate party yet allow ex parte access to employees who can clearly not be termed "represented" parties in the litigation.

### B. Opinion 668

Between 1990 and 1993, the courts of this district and of the State of New Jersey issued inconsistent opinions on the scope of RPC 4.2, particularly regarding which employees it covered and whether or not it covered former employees. *See Public Service Elec. & Gas Co. v. AEGIS,* 745 F.Supp. 1037 (D.N.J.1990); *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991); *Erickson v. Winthrop Labs.,* 249 N.J.Super. 137, 592 A.2d 33 (Law Div.1991); *State v. CIBA–GEIGY Corp.,* 247 N.J.Super. 314, 589 A.2d 180 (App.Div.1991); *In Re Environmental Ins.,* 252 N.J.Super. 510, 600 A.2d 165 (Law Div.1991); *Hanntz, supra; Neil S. Sullivan Assocs. v. Medco Containment Servs., Inc.,* 257 N.J.Super. 155, 607 A.2d 1386 (Law Div.1992).

Finally, on December 14, 1993, the New Jersey Supreme Court issued *Opinion 668,* in which it reviewed a decision of the Advisory Committee on Professional Ethics regarding the scope of RPC 4.2. After reviewing several courts' approaches to the question, the Court decided to appoint a special committee to prepare a report assessing the policy implications of various rules, deferring "final resolution of the issues until we have had the benefit of a committee process that can better advise us how to balance the competing interests involved." *Opinion 668,* 134 N.J. at 300, 633 A.2d 959. For the meantime, however, the Court "set forth interim rules of conduct that will provide guidance to the bench and bar." *Id.* at 297, 633 A.2d 959. Pursuant to General Rule 6A, these interim guidelines constitute binding authority in this Court.[4]

Under the interim guidelines, a complete bar against ex parte contacts only extends to "the control group, which, for now, we interpret to mean those employees of the organization responsible for management of the case or matter in question. . . ." *Id.* at 303, 633 A.2d 959. In addition, the interim guidelines require advance notice and an opportunity for corporate counsel to be present at any interview of employees "whose conduct, in and of itself, establishes the corporation's liability." *Id.* The guidelines apply to both current and former employees. *Id.*

Applying the procedural aspects of this rule—*e.g.,* the type of notice required, the extent of participation by opposing counsel— is relatively easy. At oral argument, the parties agreed that plaintiffs will provide for the Court's review and approval a "script" which counsel will follow in its initial contact with a potential interviewee.[5] This will ensure that each contact with a current or former Prudential employee comports with

---

4. Recently, the special committee published its report and recommendation to the Supreme Court. 139 *N.J.L.J.* 1193, at 81–84 (March 20, 1995). However, the New Jersey Supreme Court has not yet acted on the report. Accordingly, this Court will neither rely on nor comment upon it.

5. The script should ensure that the interviewer— who should be an attorney—identifies himself,

his employer, his client, the nature of and parties to the pending action and its adversarial character. The interviewer should inform the potential interviewee that she need not speak to the interviewer, that she may wish an attorney and that if, during her employment with Prudential, she ever engaged in discussion with Prudential counsel regarding this lawsuit or the circumstances from which it arose, she should not reveal it.

RPC 4.3 and will help to identify potential RPC 4.2 issues before they arise.

█ Further, plaintiffs have agreed to provide Prudential with five days' advance notice of all ex parte interviews of current or former employees who appear likely to fall into the category of employees whose conduct might, in and of itself, establish Prudential liability. Prudential, however, will not contact or attempt to contact the proposed interviewee in any manner during the time between receipt of such notice and the end of the interview. (Transcript pp. 46–49) This balances Prudential's interest in avoiding surprise with plaintiffs' right to conduct open, candid interviews. Moreover, it provides counsel in advance with the opportunity to review Prudential's files to ascertain whether an issue of privilege exists. At the interview, Prudential will not participate except to state objections on the grounds of attorney-client privilege or confidentiality. (Transcript p. 36) Finally, each side must inform opposing counsel, within ten days of such an ex parte interview, of its intention to take that person's deposition or introduce that person's testimony at trial.[6] If such notice is not given, the party who conducted the ex parte interview waives all rights to take or use that person's testimony in the case. Although plaintiffs have objected to this procedure on the ground that it violates the work product privilege, the Court does not believe that requiring parties to disclose information within ten days which will eventually be disclosed anyway violates any privilege—especially given the strong competing interest in a case of this nature in efficient, cost-effective discovery. The Court believes that where a case involves an investigation into the sales and marketing practices of a force as large and geographically diverse as Prudential's, the rules set forth herein will balance the interests of all sides to this controversy and promote the cost-effective, efficient advancement of the litigation.

█ The arena of most heated contention, however, is not the implementation of Rule 4.2 but the question of which current and former employees it covers. The parties first dispute the scope of the "control group" with whom ex parte contact is prohibited. The proposed national class and the agents assert that the language "case or matter at issue" refers only to litigation, while Prudential argues that the word "matter" applies more broadly to the events or issues in dispute and that "not only Prudential's current and former home office corporate executives but also its current and former field managers" are thereby covered. (Prudential Moving Br. p. 13)

This Court finds that the control group must extend beyond those responsible for the conduct of the litigation; if this were all the *Opinion 668* Court intended to cover, it would have used simpler language than "case or matter at issue." However, the Court does not find that every Prudential employee with the title of manager or supervisor is a member of the control group. Although the New Jersey Supreme Court did not provide much guidance as to what it meant by "management of" the case or matter at issue, this Court finds it clear that the control group can only include Prudential employees with responsibility for or significant involvement in (1) making final decisions regarding the company's conduct of the instant litigation; or (2) establishing policies or firm-wide procedures for sales or marketing of the insurance products at issue in this case. Only such employees can reasonably be termed "represented" by company counsel because only such employees might be able to speak for Prudential on any relevant question.

█ The parties also dispute the scope of the clause limiting access to employees "whose conduct, in and of itself, establishes the corporation's liability." The proposed national class argues that its complaint alleges "a company-wide scheme to harm policyholders formulated at high executive levels, carefully implemented by upper management ..." and, therefore, that the conduct of a single broker cannot, in and of itself, establish Prudential's liability for the billions of dollars in damages they seek. Accordingly, the proposed national class argues, its attor-

---

**6.** In the event ex parte interviews have already occurred, the party that conducted them should provide such notice within ten days of the date of the attached order.

neys may interview "current and former Prudential employees who possess knowledge of Prudential's wrongdoing but who were not instrumental in creating or implementing corporate policy to encourage the wrongs alleged...." (Proposed National Class Br. in Opp. p. 7) [7]

Prudential, on the other hand, argues that since proof that individual brokers committed fraud is indispensable to plaintiffs' class claims, individual brokers' admissions of misconduct may be imputed to Prudential in the aggregate and plaintiffs' ex parte contacts should be restricted accordingly. As Prudential points out, plaintiffs have not disavowed a liability theory under which, even absent direct evidence of a policy or directive from upper management, the aggregated actions of numerous brokers establish that such a policy must have existed. However, even assuming that plaintiffs will proceed under such a theory, the contribution of a single broker's testimony to plaintiffs' case would still be merely evidence and not, in and of itself, the establishment of Prudential's liability. "Were we to adopt a blanket rule prohibiting interviews with all employees whose statements might be admissible against a corporation, virtually no pre-filing investigations of claims against corporations could be conducted...." *Id.* at 300–01.

Prudential argues that plaintiffs' construction of the restriction is too narrow, and that it effectively limits its application to one employee per case. The Court disagrees. The Court recognizes that, in some situations, multiple employees could each engage in conduct which, "in and of itself," could establish corporate liability; there is obviously no rule that only one such employee exists in each case. For example, in an environmental case in which liability is strict and dozens of employees can testify that they participated in hazardous dumping, *Opinion 668* would restrict ex parte interviews with each of these employees. This, however, is not such a situation.

Accordingly, the Court does not believe it is likely that an individual broker will possess the type of information that should restrict plaintiffs' right to contact him ex parte. However, in the event plaintiffs' counsel determines that an individual agent, or any other former or current Prudential employee, does have such information, the interview or proposed interview should cease immediately and resume only after Prudential has received the notice and opportunity to be present which *Opinion 668* mandates.

## C. Other Issues

■ Prudential argued in its written submissions, but not at oral argument, that this Court should preclude ex parte contacts with Prudential agents or managers based upon confidentiality agreements they signed as a condition of employment. These contracts are between Prudential and its employees, and the matters they define as confidential— *e.g.*, "contract values and beneficiary information ... which may be used to solicit for sales on behalf of some other company ..."—are largely well outside the scope of this litigation. Although they may arguably preclude some interviewees from answering some questions plaintiffs might pose, in these limited circumstances it is up to the employee to adhere to the agreement and not to the Court to preclude the interview. Should a Prudential employee breach an enforceable obligation to Prudential, Prudential is of course free to pursue any legal remedies it might have.

■ Finally, the agents have requested that the Court make a specific finding that the rules governing ex parte contacts set forth herein and in *Opinion 668* do not apply to them, as they are parties to the lawsuit who need to enjoy full communication with their co-plaintiffs. Prudential has not disputed the point, and the Court is obviously in full agreement that, where a former employee has become a party adverse to his former corporation, the rules governing ex parte contacts with "represented" parties do not apply to restrict that employee's contacts with other parties adverse to the corporation.

7. Plaintiffs acknowledge that they seek damages for the conduct of some individual agents, and that they must comport with the restrictions set forth in *Opinion 668* before interviewing those agents.

## CONCLUSION

For the foregoing reasons, Prudential's motion to restrict ex parte contacts with current and former Prudential employees is granted to the extent set forth in this opinion. Plaintiffs are directed jointly to provide the Court, within ten days of the date of the attached order, with a proposed "script" to be followed by all counsel in their initial contacts with potential interviewees.

An appropriate order is attached hereto.

## ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 19th day of December, 1995

ORDERED that the motion of The Prudential Insurance Company of America to restrict ex parte contacts with current and former Prudential employees is granted to the extent set forth in the Court's accompanying Opinion; and it is further

ORDERED that plaintiffs are directed jointly to provide the Court, within ten (10) days of the date of this Order, with a proposed "script" to be followed by all counsel in their initial contacts with potential interviewees.